John C. L'Engle, *Plaintiff in Error*, v. The Scottish Union and National Fire Insurance Company, a Corporation, *Defendant in Error*.

1. Chapter 4173, act approved June 3rd, 1893, providing for the recovery of attorneys' fees in certain actions against fire and life insurance companies was not repealed by Chapter 4677, act

approved May 31, 1899, nor is it repugnant to any provision of the constitution of Florida, or the constitution of the United States.

2. A policy of insurance for $2,500 on two buildings contained a clause providing that "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." Attached to the policy were three endorsement slips all same date as the policy, one fixing the insurable value of the property at $2,500, in compliance with the requirements of Chapter 4677, act approved May 31, 1899, another being the standard mortgage clause with full contribution, and the third containing a description of the property insured with the amount of insurance written thereon, and a clause as follows: "$2500. Total concurrent insurance permitted." *Held,* that the clause last quoted construed in connection with the language of the entire policy, permitted other concurrent insurance not to exceed $2500. (HOCKER, J., and TAYLOR, C. J., dissenting.)

3. In construing the different provisions of a contract of insurance, all must be so construed, if it can reasonably be done, as to give effect to each. Where two interpretations equally fair may be given, that which gives the greater indemnity will prevail. If one interpretation looking to the other provisions of the contract and to its general object and scope would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability. In all cases the policy must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to the indemnity which in making the insurance it was his object to secure. When the words are without violence susceptible of two interpretations that which will sustain the claim of the insured and cover his loss must in preference be adopted.

4. If a written contract is ambiguous or obscure in its terms, so that the contractional intention of the parties can not be understood from a mere inspection of the instrument, extrinsic evidence of the subject-matter of the contract, of the relations of the parties to each other and of the facts and circumstances surrounding them when they entered into the contract may be received to enable the court to make a proper interpretation of the instrument.

This case was decided by Division B.

Writ of error to the Circuit Court for Duval county.

### Statement.

On July 25, 1901, plaintiff in error began an action against the defendant in error in the Circuit Court of Duval county to recover upon a fire insurance policy. There was a verdict and judgment for defendant, from which this writ of error was taken by the plaintiff.

The original declaration contains three counts. The first is substantially in the form prescribed by chapter 4935, act approved May 31, 1901. It makes no reference to other insurance upon the property. It claims attorneys' fees under chap. 4173, act approved June 2nd, 1893.

The court sustained a demurrer to the second count, and, in view of the conclusions reached on other assignments of error, it is not deemed necessary to state the substance of that count or to consider the assignment of error based upon that ruling.

The third count was for attorneys' fees under chap. 4173, supra. Upon motion the court struck out so much of the first count as claimed attorneys' fees, and sustained a demurrer to the third count.

After the ruling upon the demurrers the plaintiff amended his declaration by adding two new counts numbered respectively second and third. The second count of the amended declaration alleges that on or about January 10, 1901, plaintiff being the owner of the property insured, applied to defendant to issue a policy of insurance for $2,500 thereon against loss or damage by fire and directed the defendant to provide in said policy for $2,500 additional insurance upon said property; that thereafter, in compliance with such request and direction, the defendant issued and delivered to plaintiff, in consideration of $56.25 to it then paid by plaintiff, its policy of insurance which said policy

permitted $2,500 other and additional insurance, and thereby promised to insure plaintiff against loss or damage by fire to the amount of $2,500, and to make good unto plaintiff the loss or damage that night happen to an amount not exceeding $2,500 for one year from the 10th day of January, 1901, to the 10th day of January, 1902, on the two story frame shingle roof buildings and additions, situate 231-233 West Beaver street, Jacksonville, Florida, being $1,250 specifically on each building, the loss to be paid sixty days after due notice and proofs made by the plaintiff and received by the defendant, and in said policy sundry provisions, conditions, prohibitions and stipulations were and are contained and thereto annexed, as by a copy of said policy filed therewith and made a part of the declaration more fully appears; that at the time said policy was issued and delivered there was other and additional insurance upon the property to the amount of $1,500, of which defendant had notice at and before the time it issued and delivered its policy to the plaintiff, and said other and additional insurance to the amount of $1,500 was in force and effect at the time the property was destroyed by fire; that afterwards, on May 3rd, 1901, the property was totally burned and destroyed by fire, and damage and loss was thereby occasioned to plaintiff to the amount of $2,500, being $1,250 upon each of said buildings, in such manner and under such circumstances as to come within the promise and undertaking of the policy, and to render liable and oblige the defendant to pay plaintiff said sum of $2,500, on account of its policy, of which loss defendant had due notice, to-wit: on or about May 10th, 1901, whereupon defendant then and there denied that it was liable under and by virtue of the policy and denied that there was anything due the plaintiff on account of the policy and refused to pay said loss or any part thereof, for the reason that at the time said property was destroyed by fire there was other and additional insurance upon the property to the amount of $1,500; that although all conditions had been performed and fulfilled and all events and

things existed and happened, and all periods of time had elapsed to entitle plaintiff to a performance of the contract and to the sum of $2,500, and nothing had occurred to prevent plaintiff from maintaining the action, yet the defendant had not paid or made good to the plaintiff the amount of loss and damage or any part thereof, wherefore plaintiff claims $4,000 damages.

The third count of the amended declaration is substantially the same as the second, except in two particulars, as follows: 1st. It alleges that the policy permitted "$2,500 total concurrent insurance," while the second count alleges that the policy permitted "$2,500 other and additional insurance."

2nd. It alleges that long prior to the loss under the policy the plaintiff paid the defendant the premium demanded by it for the issuance of the policy, and defendant received and accepted the same and that after such payment and receipt of the premium the defendant knew of the existence of the other and additional insurance on the property and with such knowledge kept and retained the premium so paid and never at any time paid or returned the same or any part thereof, to plaintiff or tendered or offered so to do, but still retains and keeps same, while the second count omits such allegations. Each count contains other allegations not necessary to be mentioned.

The policy was attached to and made a·part of the declaration. Three riders or endorsement slips, each signed by the agent and purporting to be attached to the policy, appear as parts of the policy. The first endorsement slip contains the following, among other provisions: "$2,500.00 on the two story, frame shingle roof buildings and additons, including foundations, plumbing, steam, gas and water pipes and connections, and all permanent fixtures for heating and lighting, occupied as dwellings and situate 231-233 West Beaver street, Jacksonville, Fla., being $1,250 specifically on each building." "$2,500 total concurrent insurance permitted." The second endorsement slip is a

standard mortgage clause with full contribution. The third endorsement slip is as follows: "Florida endorsement slip For policy covering two or more buildings. The insurable values of the buildings herein described are fixed at the following amounts:

VALUE OF BUILDINGS.

Building No. 1......$1,250......Building No. 3
Building No. 2.......$1,250......Building No. 4

Attached to policy No. 263958, Scottish Union & National Insurance Company, to comply with the act of the legislature of the State of Florida regulating the issue of policies by fire insurance companies, approved May 31, 1899." The body of the policy contains a stipulation as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The defendant filed its pleas, making them applicable to each count as follows: 1st. The alleged policy was void, in that, without an agreement endorsed thereon or added thereto, the plaintiff at the time said alleged policy issued had another contract of insurance on property covered by the alleged policy.

2nd. The alleged policy was void in that, without an agreement endorsed thereon or added thereto, the plaintiff at the time of the alleged loss by fire had another contract of insurance on property covered by said alleged policy.

3rd. At the time said alleged policy was issued and delivered there was other and additional insurance upon said property procured by the plaintiff to the amount of $1,500.

4th. At the time said property was destroyed by fire, there was in force and effect other and additional insurance upon said property, procured by the plaintiff to the amount of $1,500.

5th. At the time said alleged policy was issued and delivered there was other and additional insurance upon said property, procured by the plaintiff to the amount of $1,500, and said defendant had no notice or knowledge of said other and additional insurance.

6th. At the time said property was destroyed by fire there was in force and effect other and additional insurance upon said property, procured by the plaintiff to the amount of $1,500, and said defendant had no notice or knowledge of said other additional insurance until after the alleged loss by fire.

The plaintiff filed his demurrer to each of the defendant's pleas, and assigned as matters of law to be argued: 1. The pleas do not issuably deny or avoid any material allegation of the amended declaration.

2. Said pleas do not allege any facts constituting a defense to the several counts of the amended declaration.

3. It appears by the declaration that the policy of insurance permitted other and additional insurance.

The court sustained this demurrer to the 1st, 2nd, 3rd, and 4th pleas, so far as the 3rd count of the amended declaration was concerned, and overruled it as to each of the six pleas so far as the 1st and 2nd counts of the amended declaration were concerned. Issue was thereafter joined on the pleas and a trial had with the result stated.

Among the rulings assigned as error are included those disposing of the motion to strike, the demurrer to the 3rd count of the original declaration, and the demurrer to the pleas, and the court does not deem it necessary to consider any other.

*E. P. Axtell* and *E. J. L'Engle* for plaintiff in error.

*A. W. Cockrell & Son* for defendant in error.

CARTER, P. J. (*after stating the facts*).—The rulings upon the motion to strike that portion of the first count

relating to attorneys' fees, and upon the demurrer to the third count of the original declaration which also claimed attorneys' fees, are erroneous for the reason that chap. 4173, act approved June 3rd, 1893, authorizes such recovery in cases of this kind. That act was not repealed by chap. 4677, approved May 31st, 1899, nor is it repugnant to any provision of the constitution of this State or the constitution of the United States. This was expressly decided in *Hartford Fire Insurance Co. v. Redding*, 47 Fla. 228, — South. Rep. —. We do not mean to intimate that the judgment in favor of defendant would be reversed for these errors, if no other was found on the record.

In determining the propriety of the ruling upon the demurrer to the pleas, it will be necessary to ascertain the meaning of the clause in the first endorsement slip attached to the policy reading: "$2500, total concurrent insurance permitted," as the policy was filed with the declaration and made a part of each count thereof. It is not claimed that any of the pleas should be construed as denying the execution of the policy, or of the endorsement slip, except the first and second, and as to these it is contended that the allegations: "Said alleged policy was void in that, without an agreement endorsed thereon or added thereto, the plaintiff * * * had another contract of insurance on property covered by said alleged policy," should be held to constitute a denial that the clause: "$2500, total concurrent insurance permitted," was made a part of the policy by endorsement. The court is of opinion that no such effect can be given these pleas. They do not deny the execution of the policy, nor do they deny that the endorsement slip was duly executed and attached to the policy as appears from the policy itself made a part of the declaration. They proceed upon the theory that nothing in the policy can be construed as a permission for other insurance, and that no agreement relating to other insurance was endorsed on the policy other than such as appears upon its face. By the terms of the policy it was to be void, unless otherwise provided by agree-

ment endorsed thereon or added thereto, if the insured then had or should thereafter make or procure any other contract of insurance, etc. The clause quoted from the endorsement slip purports to give the insurer's consent to or permission for insurance. It has direct reference to the provision against other insurance and can have no reference to any other provision in the policy. It was inserted at the time the policy was written for it appears upon the endorsement slip along with the description of the property insured, which bears the same date and the signature of the same agent, as the policy itself. It purports clearly and definitely to give the insurer's consent or permission for "$2500, total concurrent insurance." Unless other or additional concurrent insurance was intended then the clause means nothing more than that the insured is permitted to take out and carry this particular policy, which is absurd, for no such permission was within the contemplation of the parties or required by the terms of the policy. The use of the word "permitted," shows that the insurer intended to give its consent to something that was prohibited by the policy. As the prohibition extends only to other insurance, and not to the insurance then written, we must apply the permission to the kind of insurance prohibited, viz: other insurance, for the conclusion is irresistible that the parties so intended it. Suppose the clause had read "concurrent insurance permitted," can it be doubted that the permission was intended to relate to other insurance and to authorize any amount, provided it was concurrent? Or suppose the clause had read "$1500, total concurrent insurance permitted," would it be doubted for a moment that $1500 additional concurrent insurance was intended to be permitted? The clause permits "concurrent" insurance. The word concurrent means "acting in conjunction, agreeing in the same act, contributing to the same event or effect, co-operating, existing or happening at the same time, operating on the same objects." Webster's International Dictionary. See, also, *East Texas Fire Ins. Co. v. Blum*, 76 Texas, 653, 13 S. W. Rep.

572; *Senor v. Western Millers' Mut. Fire Ins. Co.,* — Mo. —, 79 S. W. Rep. 687; *Washburn-Halligan Coffee Company v. Merchants' Mutual Fire Ins. Co.,* 110 Iowa 423, 81 N. W. Rep. 707, S. C. 80 Am. St. Rep. 311, as to the meaning of the word as used in insurance contracts. It is very evident that none of these definitions give the word the precise meaning of "other" so that one can say that concurrent insurance necessarily means other insurance exclusively, but in every instance the word necessarily implies the existence of two or more things or conditions. Therefore the term "concurrent insurance" used in granting permission for insurance can not be construed as embracing the one amount covered by the one policy in which the permission is granted, but necessarily embraces another amount or another policy, though it might under some circumstances include the former. Otherwise we have an amount or a polcy concurrent with itself alone which is an impossibility under any definition of the word. In *East Texas Fire Ins. Co. v. Blum, supra,* the policy contained a provision: "Total concurrent insurance $4000." The word "permitted" was not used, but the court held that an amount of other or additional insurance ($3000) which with the policy so endorsed would not exceed $4000, was thereby consented to. In *Senor v. Western Millers' Mutual Fire Ins. Co., supra,* the policy covered $3500 on buildings, boilers, engines and machinery, and $1000 on stock. It also contained a provision as follows: "$3500, total insurance permitted, concurrent herewith, on buildings, boiler, engines and machinery. Other insurance permitted concurrent herewith on stock." The court held that the first clause of the permit for insurance did not authorize any other insurance on buildings, boiler, engines and machinery, but the decision was largely influenced by the last clause, which using the words "other insurance," not found in the first clause, was thought by the court to constitute a controlling circumstance showing the intention not to use the term "concurrent herewith," in the first clause as authorizing additional insurance. There

is no such clause in the policy we are dealing with to control the interpretation of the clause we have: "$2500, total concurrent insurance permitted." That clause construed naturally according to the obvious meaning of the language used and the purposes for which it was inserted, carries to the mind the idea that permission is granted to do something that the policy prohibits, *viz*: to procure insurance, but this insurance must be concurrent with that secured by the policy to which the permission is attached, and must not exceed $2,500; that is the total concurrent insurance which is permitted is $2500. See *Strauss v. Phoenix Ins. Co.*, 9 Col. App. 386, 48 Pac. Rep. 822; *Palatine Ins. Co. v. Ewing,* 92 Fed. Rep. 111. It may be admitted that the language is somewhat ambiguous, but under well settled rules for the interpretation of contracts, the conclusion we reach is correct. Thus the different provisions of the contract must be so construed, if it can reasonably be done, as to give effect to each. Where two interpretations equally fair may be given, that which gives the greater indemnity will prevail. If one interpretation looking to the other provisions of the contract and to its general object and scope, would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability. In all cases the policy must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to the indemnity, which in making the insurance it was his object to secure. When the words are without violence susceptible of two interpretations, that which will sustain the claim of the insurer and cover his loss, must in preference be adopted. 1 May on Insurance, sections 174, 175, and notes; *Strauss v. Phoenix Ins Co., supra; Palatine Ins. Co. v. Ewing; supra.* See, also, *McMaster v. New York Life Ins. Co.,* 183 U. S. 25, — Sup. Ct. Rep. —; *Hagan v. Scottish Ins. Co.,* 186 U. S. 423, — Sup. Ct. Rep. —; *First Nat. Bank of Fla. v. Savannah, F. & W. Ry. Co.,* 36 Fla. 183, 18 South. Rep. 345. It is insisted that this interpretation loses

sight of the fact that by the third endorsement slip attached
to the policy the insurable value of the property was fixed
at $2,500, being $1,250 on each building, and that it can
not be presumed the insurer intended to permit the insured
to carry other insurance equal in amount, its policy being
for the full insurable value as fixed in the policy. This slip
was attached in obedience to the requirements of Chapter
4677, act approved May 31, 1899. This statute requires
the insurer to cause the building insured to be examined
by its agent and full description thereof to be made and the
insurable value thereof to be fixed by him and written in
the policy. It estops the insurer from denying that at the
time of insuring the property was worth the amount of the
insurable value as fixed by the agent. It fixes the measure
of damages in case of total loss at the amount upon which
the insured paid a premium, and in case of partial loss at
such part of the amount upon which premiums are paid as
the damage sustained is part of the insurable value of the
building as fixed by the agent. The court fails to see that
the third endorsement slip has any controlling effect in the
interpretation of the one relating to permission for concur-
rent insurance. The insurable value is required to be fixed,
not for the purposes of permitting other insurance, but for
the purpose of arriving at the measure of damages in case
of loss. The insurer is not permitted to deny that the prop-
erty was worth the amount fixed as the insurable value, but
the statute does not deprive either party of the privilege of
showing that it was worth more if such fact should become
material. The insurable value is fixed with reference to
the particular policy in which it is written, and not with ref-
erence to all other insurance that may be permitted upon
the property. The matter of other insurance rests in con-
tract. The law does not forbid it by rendering the policies
void even if the total insurance exceeds the value of the
property. In such a case a moral hazard would result, and
the insurer might be put to inconvenience in making settle-
ment in case of loss if the insurance was not concurrent, but

in the absence of contract provisions to that effect, the policy
would not be void, though the measure of damage might
be different. So that the prohibition against other insurance
does not come from the statute requiring the insurable value
to be fixed, but results from contract provisions. These pro-
visions render the policy void unless otherwise provided by
agreement endorsed thereon or added thereto, if other in-
surance exists. The clause permitting "$2,500, total con-
current insurance" is an agreement endorsed on or added
to the policy having direct reference to and modifying the
provision against other insurance, and there is nothing in
the insurable value clause which can be construed as an-
nulling or modifying the permission given by the first en-
dorsement slip.

In view of the interpretation placed upon the clause per-
mitting insurance it is evident that the pleas set up no de-
fense to either count, for neither plea alleges that other in-
surance in excess of the limit permitted, *viz*:$2,500, existed
upon the property. The fact that the company did not know
of the existence of the other insurance is not material as
the permission to carry it is general, and the insured was not
required by the policy to give the insurer any notice in re-
gard thereto, further than to obtain permission to carry
other insurance.

We have thus far considered the question of interpre-
tation from a consideration of the language of the policy
alone, without the aid of extraneous circumstances. The
second count alleges that the plaintiff "applied to the defend-
ant to issue a policy of insurance for $2,500, on said prop-
erty against loss or damage by fire and directed said de-
fendant to provide in said policy for $2,500, additional in-
surance upon said property. And thereafter, in compliance
with said request and direction, the said defendant did issue
and deliver to the plaintiff in consideration of the sum of
$56.25 to it then paid by the plaintiff, its policy of insurance
which said policy permitted $2,500 other and additional in-
surance." The third count contains the same allegations ex-

cept that it alleges that the policy issued "permitted $2,500 total concurrent insurance." The pleas do not deny that the plaintiff directed the defendant to provide in its policy for $2,500 additional insurance, and if the clause we have been considering was inserted in response to such a direction can it be doubted that the proper construction of the clause authorizes $2,500 additional or other concurrent insurance? In 9 Cyc. p. 772, it is said that "if a written contract is ambiguous or obscure in its terms, so that the contractural intention of the parties can not be understood from a mere inspection of the instrument, extrinsic evidence of the subject-matter of the contract, of the relations of the parties to each other and of the facts and circumstances surrounding them when they entered into the contract may be received to enable the court to make a proper interpretation of the instrument. This rule has been approved in this State. *Solary v. Webster,* 35 Fla. 363, 17 South. Rep. 646; *Robinson v. Hyer,* 35 Fla. 544, 17 South. Rep. 745. See also the authorities cited in *Robinson v. Barnett,* 18 Fla. 602. The same principle has also been applied to contracts of insurance. *Reed v. Insurance Company,* 95 U. S. 23; *Butterworth v. Western Assurance Company,* 132 Mass. 489.

From the views announced it results that the judgment must be reversed and a new trial granted.

The judgment is reversed with directions to the Circuit Court to deny the motion to strike, overrule the demurrer to the third count of the original declaration and to sustain plaintiff's demurrer to defendant's pleas; and for such further proceedings as may be agreeable to law and conformable to the views announced in this opinion.

COCKRELL, J., being disqualified, took no part in the decision of this case.

SHACKLEFORD and WHITFIELD, JJ., concur.

HOCKER, J., dissenting. TAYLOR, C. J., concurring.

I am in the embarrassing position of being obliged by a conviction of duty, to dissent from the reasoning and conclusions of the court as to the sufficiency of the defense to the declaration set up by the pleas of the defendant in error.

The general rules for the construction of insurance contracts are like those which apply to other contracts. Forfeitures are generally obnoxious and any contract, insurance included, should be construed to avoid a forfeiture if it can be done without violence to the rules of law, or the accepted meaning of words and figures. I do not contest the propriety of the rule that when there is ambiguity in the language of an insurance contract,—that is, where words are used which have two or more meanings,—the meaning should be preferred which leans to the side of the insured. But it seems to me that a practical application of the principles of construction, to the case at bar, especially as they are applied in the cases cited in the majority opinion, lead to a conclusion the reverse of that of the majority opinion.

In the case of *Senor v. Western Millers' Mut. Fire Ins. Co.,* — Mo. —, 79 S. W. Rep. 687, there was an insurance policy for $4,500 to Senor, of which $1,200 was on buildings, $1,600 on machinery, etc., in mill building, $700 on steam boilers, engines, etc., in boiler and engine house, $1,000 on grain, etc., which was in said building, and lastly, "$3,500, total insurance permitted concurrent herewith, on buildings, boiler, engines and machinery. Other insurance permitted concurrent herewith on stock." The policy contained a provision that "this policy, unless otherwise provided by agreement, endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." Senor obtained from another company a second policy for $2,000; $500 applicable to the frame flour mill building, in-

cluding, etc., covered by the policy of the defendant, the Western Millers' Mut. Fire Ins. Co. It was contended by Senor and denied by the defendant (W. M. Mut. Fire Ins. Co.) that the $500 additional insurance was warranted by the policy. The court on this phase of the case held the defendant company's contention was sound. The court, among other things, says: "We are unable to reach the conclusion that it was intended by the terms 'concurrent herewith' to authorize additional insurance. The terms employed in the concluding part of the provision, 'other insurance permitted concurrent herewith on stock,' clearly excludes the idea that such meaning was to be attributed to the first clause of the provision. While the provision, '$3,500 total insurance permitted, concurrent herewith, on buildings, boiler, engines and machinery,' is not most happily expressed and is deservedly subject to criticism, and furnishes the able and ingenious counsel (which he is fully warranted in entering) a great field for a play upon terms, if this provision is to be construed as contended for by respondents, it would be necessary to change the term 'total,' and add in its stead the word 'additional.' 'Total insurance,' as used, contemplates the entire insurance upon the property. *'Concurrent herewith' relates to the terms 'total insurance,' in other words, it means that the total insurance must all concur with this—that is, this policy provides the subjects upon which there must be a concurrence. This policy designates the property upon which the insurance operates, and the time of its operation, and there must be a concurrence of the total insurance in harmony with the time and property as fixed by the policy in suit.* (Italics ours.) Let us transpose the first clause of the provision thus: '$3,500 total insurance permitted on the building,' etc. In that form it is apparent that the limitation embraces the entire insurance. Does the adding of the words 'concurrent herewith,' convey the meaning that $3,500 additional insurance is permissible? We think not. It simply means that there must be a concurrence of the total insurance upon the subjects provided in the policy before us;

that is, the total insurance must operate at the same time and upon the same property as is fixed by the policy upon which this suit is brought." The court then says that "the conclusion reached upon this proposition is *emphasized* (not that it was a "controlling circumstance," or that the conclusion was "largely influenced" thereby) by the concluding clause of the provision. It will be observed in that clause, where it is apparent that the parties intended to provide for additional insurance that such terms were used as clearly expressed such intent. It was there expressly stated "other insurance permitted concurrent herewith on stock." It is apparent from this whole quotation, if the court were satisfied the last clause alone was a *controlling circumstance* and clearly excluded the idea that concurrent insurance could not mean additional insurance in the first clause, that the whole reasoning of the court subsequent to the two first quoted sentences, was futile and useless, and a mere waste of words. The statements of the first two quoted sentences would have settled the matter. But as the court did not rest its views there, but reasoned out its views upon the first clause, we, in fairness of criticism, are constrained to say with it, that its views thus reasoned out, were in its own language *emphasized*—not "largely influenced" or "controlled" in any way—by the concluding clause of the provision. The court does not indicate that there was any infirmity or weakness in its deductions made upon the language of the first clause, which it was necessary to buttress by calling in the aid of the second clause. The deductions made from the language of the first clause were *simply emphasized* by the deductions made from the language of both clauses taken together.

Thus viewed, this decision, so far from sustaining the majority opinion, overthrows it. For in this case the total insurance of Senor on the mills, machinery and steam boilers, etc., in boiler and engine house, was $3,500, and $3,500 was the total insurance permitted "concurrent herewith."

Afterwards, without proper endorsement of consent on the policy, Senor obtained $500 additional insurance on a part of the same property. The court held that this act of Senor made the policy void as to him. If the case of *East Texas Fire Ins. Co. v. Blum,* 76 Texas 653, 13 S. W. Rep. 572, has any bearing on the case at bar, it is rather against, than in support of, the majority opinion. In that case, at the time of the issuing of the policy sued on for $1,000, there was $3,000 insurance on the property. The policy sued on contained the following, and other provisions: "Total concurrent insurance, $4,000." "This policy shall become void unless consent in writing is endorsed by the company thereon in each of the following instances, viz: Sec. 1, * * Sec. 2. If the assured have or shall hereafter obtain any other policy or agreement for insurance, whether valid or not, on the property above mentioned, or any part thereof." Says the court: "Additional insurance was obtained without the consent of the company, and in accordance with its terms the policy became void unless the insertion in the policy of the words 'total concurrent insurance,' gave to the assured the right to procure other insurance, without further consent of the company." It was contended by the insured that the policy entitled him to take out $5,000 insurance without consent of the insurance company—construing the contract as authorizing him to take out $4,000 insurance in addition to his $1,000 in the policy sued on, without the consent of the company. The court in effect held that the phrase "total concurrent insurance, $4,000," was a limitation on the total amount of insurance—without further consent; and that taking out other insurance without consent made the policy void—and consequently that "total concurrent insurance, $4,000," did not mean "total *additional* insurance, $4,000." In the case at bar, the result of the reasoning of the majority opinion makes the word "concurrent" equivalent to the word "additional." The quoted case does not, in my judgment, authorize such a construction. In the case of *Washburn-*

*Halligan Coffee Company v. Merchants' Mutual Fire Ins. Co.*, 110 Iowa 423, 81 N. W. Rep. 707, S. C. 80 Am. St. Rep. 311, the only question relevant in any sense to the case at bar, was whether the phrase "other concurrent insurance permitted," required later policies to exactly concur in covering *all the insured property for all of the period of time of insurance*. The court held that it should not be so construed. I have failed to find any case cited in the majority opinion, or in any dictionary, or in any other authority, the adjective "concurrent" defined as equivalent to, or synonymous with the adjective "additional." It is stated that "when words are without violence susceptible of two interpretations, that which will sustain the claim of the insurer and cover his loss must be preferred." To this proposition I entirely agree. But is no violence done to the usual meaning of language by making the word "concurrent" the equivalent of the word "additional?" I can discover no escape from an affirmative answer to this question. It is argued that the mere fact that the clause "$2,500, total concurrent insurance permitted," was attached to the policy, shows clearly an intent to permit other insurance than that provided for by the policy, or otherwise its presence is an absurdity. It is possible that the clause shows some sort of intent to permit other insurance. Its informity is that it does not show enough.

In the case of *The Philadelphia Underwriters Ins. Co. v. Bigelow,* decided by this court at this term, the concurrent insurance clause is as follows: "$ ——— x ———, total concurrent insurance permitted." The daily report of the agent showed this clause, and also "additional insurance $———. Are the policies concurrent? Yes." The argument that these endorsements were absurd and useless unless they were construed to show that other insurance was thereby intended to be permitted was made, but was not thought to be constraining; and this court held that they did not of them-

selves show a purpose to allow other insurance. I see no practical difference between that case and the one at the bar. It is true that in the former case there was no sum of money placed after the dollar mark. In this case there is $2,500—but this amount is too small by $1,500 to cover any insurance except that in the policy to which it is attached. If A should go into the business of keeping a ferry over a sheet or stream of water 4,000 feet wide, and should order 4,000 feet of wire from his hardware merchant, and the merchant should send him 2,500 feet of wire, how much better off would A be, so far as the operation of his ferry was concerned, than if the merchant had sent him no wire at all? I am not able to discover. And so $2,500 can not by any violence of construction be made the equivalent of $4,000. What the plaintiff in error needs to meet the allegations of his declaration is a policy permitting $4,000 concurrent insurance, or $1,500 in addition to the amount of his policy. This he has not. If from fraud or mistake the policy does not state the true contract between the parties, then the plaintiff's remedy was in equity, and not at law. 4 Joyce on Ins., secs. 3510, 3511; *Taylor v. Glens Falls Ins. Co.*, 44 Fla. 273, 32 South. Rep. 887. It is emphasized that, if the terms of a policy are *capable* of two or more interpretations equally reasonable, it is proper to adopt that construction which is most favorable to the insured. But my judgment is, that this rule will not authorize a court to construe $2,500 as the equivalent of $4,000 or $5,000; for the simple reason that figures and numbers do not symbolize different and contradictory notions or ideas. Believing as I do that these views are sustained by the cases of *Senor v. Western Millers' Mut. Fire Ins. Co., supra,* and *Philadelphia Underwriters Ins. Co. v. Bigelow, supra,* by the rules of construction, and by reason, I think the demurrer to the pleas should not have been sustained.