## ZIMMERMAN V. THE HOME INSURANCE COMPANY

**Fire Insurance:** BREACH OF POLICY BY ADDITIONAL INSURANCE: NOTICE AND CONSENT: EVIDENCE. The defendant issued to plaintiff a policy of fire insurance for fifteen hundred dollars on a certain building, and the policy permitted other insurance to the extent of fifteen hundred dollars, and provided as follows : " If the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, this policy shall be void;" also, " The managers of the company at Chicago are alone authorized to make any change or grant any privileges under this policy, and any indorsement or agreement varying the contract, made by any agent or sub-agent of the company, is void." On the policy were indorsed the words: "DUCAT and LYON, Managers, Chicago, Ill." At the time the policy was issued there were two other policies in force upon the building, one for fifteen hundred dollars, and the other for two thousand dollars of which the company's agent who transacted the business had notice; but it was the understanding that the two thousand dollars should be canceled, which, however, was never done. The fifteen-hundred-dollar policy expired a short time after the policy in question was issued, and plaintiff secured the same amount of insurance in another company. After doing this he notified the agent of defendant, through whom he had secured defendant's policy, of that fact, and said : " Shall I notify the companies, or will you?" This agent was also the agent for the company which carried the two-thousand-dollar risk. There was no evidence that plaintiff ever sought or secured, either through the local agent or the managers at Chicago, permission to carry more than fifteen hundred dollars additional insurance, and the property was burned before any additional premiums had been paid to defendant. In an action on the policy, *Held*—

    (1) That the failure or inability to get the two-thousand-dollar policy canceled according to the understanding did not operate as a permission from defendant to carry it in excess of the amount allowed by its policy, and that by carrying the excess the policy was rendered void.

    (2) That there was no evidence to be submitted to the jury on the question whether the defendant had consented to the excessive insurance, and that the court properly directed a verdict for defendant.

*Appeal from Delaware District Court.*—HON. D. J. LENEHAN, Judge.

FILED, MAY 27, 1889.

ACTION on a policy of insurance. There was a judgment for the defendant, and the plaintiff appeals.

*J. H. Trewin* and *J. H. Shields*, for appellant.

*Cole, McVey & Clark* and *Bronson, Carr & Le Roy*, for appellee.

GRANGER, J.—On the twenty-second of December, 1886, the defendant company issued to the plaintiff its policy of insurance for fifteen hundred dollars on a certain building in Earlville. The building was, on the eleventh of May, 1887, totally destroyed by fire. The policy by its terms permitted fifteen hundred dollars of other insurance, and also provided that "if the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, * * * this policy shall be void." At the time of applying for the policy in defendant's company, the plaintiff held a policy in the Merchants & Bankers' Company for two thousand dollars, and one in the Hecla Insurance Company, of Madison, Wisconsin, for fifteen hundred dollars. The policy in the Hecla Insurance Company would expire, by limitation, February 9, 1887, and that of the Merchants and Bankers', November 24, 1891. At that time the plaintiff undertook to cancel the policy in the Merchants and Bankers' Company, and for that purpose wrote across the policy the words, "Please cancel this policy," signed it, and sent it to the company. Letters were also written to have the policy canceled. It was not, however, canceled, and the company continued to carry the risk. The last part of January, 1887, and before the expiration of the policy in the Hecla Insurance Company, the plaintiff took an additional policy of insurance for fifteen hundred dollars in the Council Bluffs Insurance Company.

I. The defendant company resists payment of the

loss for the alleged reason that the taking of this additional insurance was a violation of the contract, and avoided the policy. The appellant's claim is that the additional insurance was with notice to the company, and with its consent. The business of appellant with the defendant company was done with and through one J. H. Fuller, at Earlville, both as to the original taking of the insurance and the consent for additional insurance, as claimed by appellant. On the face of the policy is the following provision: "The managers of the company at Chicago are alone authorized to make any change or grant any privileges under this policy, and any indorsement or agreement varying the contract made by any agent or sub-agent of the company is void." On the policy is indorsed the words: "DUCAT and LYON, Managers, Chicago, Illinois." At the close of the plaintiff's testimony the court, on motion of defendant, orally instructed the jury to return a verdict for it, which was done. Some further errors appear by assignments, but they are all embraced in the one query: Did the court err in this instruction to the jury? The theory of the appellant is that there was testimony on which the court should have submitted to the jury the question of whether or not the company had been notified of the additional insurance, and consented thereto.

The plaintiff was not a witness at the trial, and R. Zimmerman, her husband, seems to have done all the business for her, and was a witness, and it was this witness that gave the notice and obtained the consent to additional insurance, if it was obtained. The abstract of appellant shows the testimony of R. Zimmerman on this subject to be as follows: "I had a conversation with Mr. Fuller on or about the ninth or tenth of March, 1887. I said to him: 'Shall I notify the companies, or will you?' I have taken insurance in the Council Bluffs. The Merchants and Bankers' he knew all about long before. I notified him I had fifteen hundred dollars in the Council Bluffs and two thousand dollars in the Merchants and Bankers'. I have known Mr. Fuller

about nineteen years. He is justice of the peace, and in the insurance business. He represents the New York Home and Merchants and Bankers'. He was agent for them when I dealt with him. Fuller had the agency for the Home for twelve or fifteen years. He did all the business with the policy-holders there for the Home Insurance Company. The policy sued on was obtained by me from Mr. Fuller. At the time I made application for the Home policy I had fifteen hundred dollars other insurance in the Hecla Insurance Company, and two thousand dollars in the Merchants and Bankers', and told Fuller all about both of them. *Cross-examination.* I went to Mr. Fuller's office about the ninth of March. John Young was there. I told Fuller about the Council Bluffs and the Merchants and Bankers' policy. I was going to drop the Merchants and Bankers', because I had to pay too much assessments. I had the Home, and told Mr. Fuller I got a policy in the Merchants and Bankers'. I had fifteen hundred dollars' insurance in the Hecla, also, when I got the Home policy, and Fuller knew all about them. At the time I got the Home policy, in December, I did not suppose the Merchants and Bankers' was canceled. It was never canceled. *Redirect.* I sent in the Merchants and Bankers' policy to be canceled about the fifteenth of December, and got a letter back in three or four days, that they would not cancel it; and I then, the same day, had a further talk with Mr. Fuller, and showed him a letter. The letter stated that they would not cancel unless I would pay short rates. Mr. Fuller then wrote a letter to the company for me, and said in it that I would pay the full year and not at short rates, and I sent them the year's premium. The company then sent the policy back. The Hecla policy expired on the ninth of February, 1887, and the Council Bluffs began on that day. The Merchants and Bankers' policy was never canceled. *Recross.* I received the letter from the Merchants and Bankers' in which they refused to cancel the policy before the twenty-second day of December, when the Home policy was made." At the

time of this conversation, one Young was present, and his testimony in most respects corroborates that of Zimmerman. But take Zimmerman's testimony as in all respects uncontradicted, and what is its value? It is to be kept in mind that he is seeking to show an agreement or consent, under his contract of insurance, for additional insurance. Under the letter of his contract with the defendant, such consent must be from the managers at Chicago; and, if it should be conceded that the fact of the consent may be shown by parol, where is the testimony even tending to show it? It is not disputed but that the taking of the additional insurance would avoid the policy. The evidence, then, is that after the taking of the insurance Zimmerman went to Fuller, and said: "Shall I notify the company, or will you? I have taken insurance in the Council Bluffs'. He knew of the Merchants and Bankers' long before."

Now, we do not say that the condition of appellant would be better, but his claim would be far more plausible, if before taking the insurance he had notified the agent, and then, without objection, had taken it. But here he has done the act which avoids his policy, and then, by a mere notice, without asking consent, he seeks to show that consent was given merely because of knowledge of the breach. We do not think such a rule has ever been sanctioned by a court of last resort. We are referred to many cases in which it is held that the knowledge of the agent is the knowledge of the company. The facts as a basis for such a holding are that if the agent, when he takes the risk, knows of insurance, and the policy stipulates against it, the company is bound by this knowledge of the agent, and will not be permitted to receive a premium for insurance, and then avoid liability for the existence of a fact which it knew to exist when making the contract and receiving the premium. Such a rule is founded in sound public policy, and fraught with good results. But how different is this case. Here there is a contract against, not what actually exists, but against a future occurrence, except by its consent, and then the event sought to be

avoided is forced upon it, in violation of the agreement, and their consent sought to be established merely by notice of the fact that the wrong has been done. In this case the appellant could not have been misled by the silence of the company, for his *status* was not changed in consequence of such silence. He was not in a position to act, relying upon this notice to defendant, —if, indeed, it was such a notice,—for his action preceded the notice. If the defendant had received money as premium after this notice, or had, by its silence or acts, in any manner induced a change in the affairs of appellant, the rule might be different. This much has been said upon the theory that notice of the additional insurance to the agent, Fuller, would be notice to the company. The contract of insurance gave notice to the appellant that the terms of the contract could only be changed by consent of the managers at Chicago. But it seems that Zimmerman did not think that notice to Fuller would be of avail, his purpose being to notify the company, as he asked which should do it. There is nothing to indicate that he sought consent or approval, for nothing of that kind is mentioned, nor is there a word of proof that he ever made inquiry as to the answer of the company, if he expected Fuller to notify it. Some importance is attached to the fact, by appellant, that, when Zimmerman asked of Fuller which should notify the company, he said, in substance, that it was all right,—he would attend to his own company. The language does not indicate in any sense a purpose to consent for the company, and there is no claim that the company ever returned a consent after notice. We think appellant entertains an erroneous view of the law as to the authority of an agent to change the conditions of a policy after the contract is completed. The distinction between the authority of a soliciting or local agent to bind the company at the time of making the contract, and changing it after it is made, is well defined by the decisions of courts. In the making of contracts the law, regardless of the purpose of the company, invests the agent with sufficient authority to contract on

a basis of fairness to both parties, and, when a contract is thus made, the law should protect the parties in its faithful observance. This contract expressly provided how and with whom it could be modified. The case of *Hankins v. Insurance Co.*, 70 Wis. 1; 35 N. W. Rep. 34, is directly in point. It is of importance as to the right of appellant to continue excessive insurance merely because it was on the premises when the policy in question issued, and also as to the conditions of the policy as to how its provisions could be changed ; and in that respect it is very similar to the case at bar. In that case there was an application to the local agent for permission to mortgage the premises, which permission would be a waiver of the conditions of the policy. The agent said : "It's all right. Go ahead, and make out the contract." The condition of the policy was that such a waiver could only be by the secretary of the company, in writing. It was held to be no waiver, and the encumbering of the property avoided the policy. The case cites a large number of authorities in support of the rule.

II. It is urged in argument that, at the time the policy issued, there was insurance on the property in excess of the limit under the policy. That is true ; but at that time there was an effort to cancel the Merchants & Bankers' policy, which would have brought the amount within the requirements of the contract. The company, however, was bound to contract with refer- ence to the facts as known at the time. It was then expected by both parties that the reduction would be made. Both parties then understood what the amount of insurance was expected to be, and the mere fact that it could not be reduced when it was intended to be would not make a contract that the excessive amount should be kept up by additional insurance. See *Han- kins v. Insurance Co., supra.* The wisdom of a limita- tion as to the amount of insurance on property is too manifest to deserve notice, and parties have the right to fix the limit by contract. When thus fixed, it should be observed. Insurance companies are held to a fair

construction of their contracts of insurance, and no unfair advantages are allowed to them. This is not a case of a complaint of unfairness, nor of advantages by virtue of superior skill or extended experience. The plaintiff knew well his contract, and, with such knowledge, violated it. We think there was no testimony to justify submitting to the jury the question of a consent, and that the judgment of the district court should be

AFFIRMED.