WASHBURN-HALLIGAN COFFEE COMPANY v. MERCHANTS' BRICK MUTUAL FIRE INSURANCE COMPANY, Appellant.

**Insurance: WAIVER OF PROOF OF LOSS.** A stipulation in a contract of insurance that no officer, agent, etc., of the company shall have power to waive any provisions thereof, unless such waiver

1  shall be written upon or attached to the policy and approved by the secretary, does not prohibit the secretary of such company from otherwise waiving the conditions requiring the insured to furnish proofs of loss.

**SAME.** Defendant's secretary wrote plaintiff that as soon as the proofs of plaintiff's loss on its property, which were to be made out by another company, liable on a concurrent policy, were ready, he would make out proofs, and send them direct to plaintiff to be signed. Later he requested from plaintiff a statement

2  showing the items, values, etc., as adjusted by certain other companies, liable on concurrent insurance, etc., from which he might be able to make up plaintiff's proof of loss, which statement plaintiff promptly furnished. A subsequent letter from such secretary, in effect, denied liability on the part of his company. No evidence was introduced showing withdrawal of such promise to make proof of loss for plaintiff. *Held*, that this showed a waiver on defendant's part of the condition requiring plaintiff to furnish proofs of loss.

**"CONCURRENT INSURANCE" DEFINED.** In a policy permitting "concurrent insurance" the term includes policies running with that

3  of defendant and sharing its risk, and includes those covering not only a part of defendant's risk, but all of it and more.

*Appeal from Scott District Court.*—HON. C. M. WATERMAN, Judge.

MONDAY, JANUARY 29, 1900.

Action on insurance policy. The issue involved three questions: (1) Did the company's secretary waive proofs

of loss?  (2) Did he have authority so to do?  And (3) was its policy concurrent with others?  The defendant appeal from the judgment entered against it.—*Affirmed.*

*McVey & McVey* for appellant.

*Cook & Dodge* for appellee.

Ladd, J.—The property insured burned March 23, 1896, and proofs of loss were not furnished until May 25th following,—more than sixty days thereafter.  As a condition precedent to the maintenance of the action, it was incumbent upon the plaintiff, in the absence of any waiver, to prove that it had "given the company or association notice in writing of such loss, accompanied by an affidavit stating the facts as to how the loss occurred," so far as they were within his knowledge, and the extent of the loss, which notice must be given within sixty days from the time the loss occurred.  Section 3, chapter 211, Acts Eighteenth General Assembly (section 1744, Code).  The numerous provisions of the contract concerning proofs of loss need not be set out, as they are superseded by this statute.  *Warshawky v. Insurance Co.,* 98 Iowa, 221; *Welsh v. Insurance Co.,* 71 Iowa, 338. Repeating in the policy its conditions neither added to nor detracted from the obligation of either party, and unless waived by the correspondence of the secretary of the defendant, as averred by the plaintiff, there can be no recovery. We have for solution, then, two questions: *First.* Had the secretary authority to waive?  And, *second,* did he do so?

II.  All letters addressed to the company were answered by the secretary, who appears to have acted as its mouthpiece in the transaction involved in this suit, and we understand his authority to waive proofs of loss to be conceded, but for the stipulation contained in the contract that "no officer, agent, or other representative of this company shall have power to waive any provision or

condition of this policy, except such as by the terms of this policy may be subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, and approved by the secretary." A similar provision may be found in the company's by-laws. It would seem that, by requiring the approval of the secretary of any such waiver, he is excluded from those who may only waive in writing; for it could hardly have been contemplated that he would first write this out, and then approve what he had done. But, as the provisions are sweeping, we prefer to put our conclusions on another ground. This stipulation relates to the conditions and provisions of the policy, and not to their performance; or, as put in numerous authorities, it" applies only to those conditions and provisions in the policy which relate to the formation and continuance of the contract of insurance, and are essential to the binding force of the contract while it is running, and does not apply to those conditions which are to be performed after the loss has occurred, in order to enable the assured to sue on his contract, such as giving notice and furnishing preliminary proofs." We believe it to have been uniformly so held when attention has been directed to this particular point. *Wheaton v. Insurance Co.,* 76 Cal. 417 (18 Pac. Rep., 758, 9 Am. St. Rep., 216), and valuable note on page 234; *Association v. Matthews,* 65 Miss. 301 (4 South. Rep. 62); *O'Brien v. Insurance Co.,* 52 Mich. 131 (17 N. W. Rep., 726); *Franklin Fire Insurance Co. v. Chicago Ice Co.,* 36 Md. 102; *Blake v. Insurance Co.,* 12 Gray, 265; *Carson v. Insurance Co.,* 43 N. J. Law, 300 (39 Am. Rep., 584); *Insurance Co. v. Capehart,* 108 Ind. 270 (8 N. E. Rep. 285); *Rokes v. Insurance Co.,* 51 Md. 512; *Insurance Co. v. Staats,* 102 Pa. St. 529; *Insurance Co. v. Weiss,* 106 Pa. St. 20. The conditions contemplated are of the essence of and form a part of, the con-

tract of insurance, upon which its continuing force depends. Under a valid policy, liability attaches on the happening of the loss, and evidently the requirement of proofs of loss pertains, not to the provisions of the policy, but to the performance of them. *Blake v. Insurance Co., supra.* Furnishing proofs within a limited time certainly is of the procedure to enforce the terms of the contract, and is by the statute, independent of policy, a condition precedent to the maintenance of an action. We do not overlook *Kirkman v. Insurance Co.,* 90 Iowa, 457, and *Ruthven v. Insurance Co.,* 92 Iowa, 326. In these cases the validity, only, of such stipulation, and not its applicability, was considered, as clearly appears from an examination of the authorities cited. The decision in the former rests, without stating the reasons, on three cases: *Zimmerman v. Insurance Co.,* 77 Iowa, 691, and *Cleaver v. Insurance Co.,* 65 Mich. 527 (32 N. W. Rep., 660) (each holding that forfeiture because of additional insurance could not be waived by a local agent), and *Hankins v. Insurance Co.,* 70 Wis. 1 (35 N. W. Rep., 34) (annuncing the same rule in case of forfeiture because of the execution of a mortgage). We shall not review in detail the cases cited in *Ruthven v. Insurance Co., supra.* Suffice it to say that all but two relate to the provisions of the contract, and not to the performance of same after loss. The two are the *Kirkham Case* and *Smith v. Insurance Co.,* 60 Vt. 682 (15 Atl. Rep., 358, 1 L. R. A. 216). In the latter, again, only the validity of the stipulation was considered, and the decision bottomed on New York, Massachusetts, and Michigan cases in which the facts related only to the continuance of the contract in force. See, also *Gould v. Insurance Co.,* 90 Mich. 302 (51 N. W. Rep., 455) ; *Knudson v. Insurance Co.,* 75 Wis. 198 (43 N. W. Rep., 954). The fact that our statute has superseded all requirements of the policy relating to proofs of loss, rendering these mere surplusage, furnishes an additional reason for saying that such a stipulation does not concern the performance of the pro-

visions of the policy after loss.  Furnishing proofs is a matter of form, something like the demand required in certain ·cases.  As said in *Blake v. Insurance Co., supra*: "If the plaintiff relied upon any exemption from the obligations of the policy, or any modification of them by the agents or ·officers of the company, or any addition, he must show such ·exemption, modification, or addition by indorsement upon the policy.  But the question whether a stipulation as to notice and proofs of loss has been fulfilled, or whether the ·defendant is in a condition to be heard upon that question, must be tested by the ordinary rules of law.  There is a time when objections in matters of form must be taken.  If they are not then made, they never can be made.  The law does not say the procedure was perfect, but that the question is not open.  The adherence to a liberal application of this principle is necessary to the maintenance of good faith and fair dealing in judicial proceedings."  The point was not made or considered in the *Kirkman* and *Ruthven Cases,* and for this reason we are more readily persuaded of our duty not to follow them.  Former decisions should only be disturbed on great consideration, for courts have no assurance of being wiser than their predecessors.  But when the applicability of a rule of law is lost sight of, because not questioned, in passing upon its validity, there is no just ground for halting in reaching a right conclusion, in harmony with the voice of reason and authority; for in such event the point has never been determined, save inferentially.

III.   That proofs of loss were in fact waived, the record bears conclusive evidence.  This was done—*First,* by leading the plaintiff to rely on the defendant for their preparation; .and, second, by the denial of liability.  March 28th the secretary of the defendant requested "the name and amounts of the companies covering our furniture and fixtures concurrent with our policy."  April 4th the ·secretary advised the plaintiff that the company had' made arrangements with the State Insurance Company to look

after the loss through their adjuster, "who they informed us was then at your place, and it would not be necessary that we go to the expense of sending an adjuster down; that they would let us know as soon as their proofs were ready, and we could make out proofs, and send direct to you to be signed. This, as I understand, is a total loss, and we think it hardly necessary to go to an extra expense in the matter, as papers can all be forwarded to you and be signed up as well without us as with us on the ground, and will be mailed to you as soon as we can hear from the State Ins. Co. in regard to the matter, which will be no doubt very soon if their adjuster has returned home, and we shall look after this matter, and let you hear from us promptly in reference to it." April 25th he requested "a statement showing the items, value of each as adjusted by the State and Security Ins. Companies, together with a copy of the form or written portion of each of their policies, from which we may be able to make up proofs of loss." In response to this the plaintiff sent "a statement of the basis on which the Security settled," and copies as requested. April 25th the secretary, after referring to adjustments of the other two companies, added: "We wish to have you explain why there should be any difference in the adjustment of this loss under the three policies mentioned. To our minds, there seems to have been some very fine figuring behind the scenes somewhere, and we must have an explanation, so as to enable us to make out our proofs intelligibly; and if you are unable to give us the particulars, and also an itemized statement of your loss, it perhaps will then be necessary to look somewhere else for the information required under the policy and contract." The plaintiff responded, with explanation; adding, "This looks to us as though there should be no question but what you should pay the full two thousand dollars insurance. If this explanation is not satisfactory, we see no other way than to have you come here and go over it yourself, as we have no fear of not being able to convince you that we are entitled to the face of the policy." These letters of the secretary were all in

response to communications addressed to the defendant company; and the plaintiff had the right to assume, in the absence of knowledge to the contrary, that he was authorized to act in its behalf. The promise contained in that of April 4, 1896, that proofs of loss would be prepared and sent to the assured for signature, was never withdrawn or modified, and was tantamount to saying that these need not be prepared by the plaintiff. *Scott v. Insurance Co.*, 98 Iowa, 67. True, facts and items were called for, but only to enable the defendant to do as agreed. The last letter on the subject contains no intimation to the contrary, merely suggesting the necessity of the defendant looking "elsewhere for the information required under the policy." The claim of appellant that there was any subsequent request for proofs of loss has no support in the record; and we think that the defendant, in promising to prepare them, relieved the plaintiff from so doing, thereby waiving the requirements of the statute. And, in the light of the previous correspondence, the last letter of the secretary, dated May 13, 1896, was such a denial of liability as to dispense with such proofs. Omitting the formal parts, it reads: "We now avail ourselves of the first practical opportunity to carefully examine and to reply to your several letters and inclosures, and the information therein contained in reference to your loss, which occurred on the 23d day of March, 1896. Upon examination of the three schedules attached to the three policies, we find that the insurance was not concurrent with ours, as required by our policy." It must not be forgotten that "the letters, inclosures, and information" referred to had been sent to the company to enable it to carry out its promise to prepare proofs; that the plaintiff had persistently urged the adjustment of the loss; that the policy provided that, "unless otherwise provided by agreement indorsed hereon or added hereto, it shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy," and that indorsed thereon were the words, "Other con-

current insurance permitted." In view of these facts, what does this letter mean? Can the purpose of the secretary to declare the policy void be questioned? With what object was the letter written? Clearly, to deny liability. With everything before him, why were proofs not forwarded as agreed? Evidently, as according to his view the policy was void, these were unnecessary. If the purport of this letter is not denial of liability, what could have been the object in writing it? True, it was not a candid expression of the company's purpose, but, as said, in view of the previous correspondence, its meaning was apparent. Denial of liability must be unequivocal, as contended by appellant, but not necessarily in express language. If all the correspondence, considered together, establishes such denial, it is quite enough. *Parsons v. Grand Lodge*, 108 Iowa, 6; *Bloom v. Insurance Co.*, 94 Iowa, 363; *Soorholtz v. Insurance Co.*, 109 Iowa, 522.

IV. Was this policy concurrent with those of the other two companies? If not, under the provisions of the policy already quoted it was void from its inception. The written portion of defendant's policy was as follows: "Two thousand dollars on their electric motor and connections, coffee roasters and their foundations, arches, casings, coffee, mustard, and spice grinding mills, coffee-cleaning mills, printing press, type, belting, chases, fan coolers, cooling fans, trucks, scales, scoops, coffee bins, pipes and pulleys, and other movable and fixed machinery, safe, desk, chairs, typewritng machines, letter press, stationery, and all other office fixtures, tea cans, sample cases, all while contained in the three story brick building situated at No. 115 and 115½ East Second street, Davenport, Iowa. Other concurrent insurance permitted."

That contained in policies of the State and Security Companies reads: "$1,000 on their boilers, engine, and coffee roaster, foundations and connections, casings and arches, fixtures, and appurtenances, other fixed and movable

machinery, shafting, gearing, pulleys, belting, trucks, and scales, while contained in the three-story brick, metal-roof building, situated Nos. 115 and 115½ East Second street, Davenport, Iowa. Other Con. Ins. Per." It will be noticed that the policy sued on covers all the property described in the others, with the possible exception of boilers, and much more. The defendant contends that, to be concurrent, the insurance must cover the identical property, and no other. A different conclusion was reached in *Corkery v. Insurance Co.*, 99 Iowa, 382. True, that decision was somewhat influenced by a provision in the contract indicating that other insurance might "be specific or by general or floating policies;" but that was referred to as obviating the objection that, where identical property is not covered by all policies, much difficulty would be experienced in adjustment of a loss. Such a difficulty does not furnish a good reason for not carrying out the terms of the contract. At least two text writers of repute assume the meaning of "concurrent" to be as contended by appellant, and then state the difficulty mentioned as a ground therefor. Joyce, Insurance, section 2480; Ostrander, Insurance, section 564. Nor do we think *Insurance Co. v. Brown*, 82 Tex. 631 (18 S. W. Rep. 713) so holds. The policy of one thousand dollars there sued on was issued on property insured for three thousand dollars, and contained the clause, "Total concurrent insurance, four thousand dollars." Without consent, the insured procured another policy of one thousand dollars, and it was held that, as this exceeded the insurance authorized, there could be no recovery. After quoting definitions from the dictionaries, the court said: "To be concurrent, the insurance must operate at the same time, upon the same property, and look to the same indemnity of the insured in case of its loss or destruction from casualty insured against." But the policies in that case covered precisely the same property, and the question under consideration was not involved. Here the clause "other concurrent insurance permitted" did no more than wipe out the pro-

hibition of the policy. The hazard of excessive insurance was entirely waived, and, in so far as the risk was concerned, it was immaterial whether the additional insurance was on one or all the items covered by the defendant's contract. "Concurrent insurance," under the circumstances, means any insurance running with that of the defendant, and sharing its risk. If so, it would include policies covering not only a part of defendant's risk but all of it, and more. The definitions of the lexicographers warrant such a conclusion. Take that of Webster, as quoted in the *Corkery Case:* "Concurrent: Acting in conjunction; agreeing in the same act; contributing to the same event or effect; co-operating; accompanying; conjoined; associate; concomitant; joint and equal; existing together, and operating on the same objects." Might not the assured reasonably understand from this the meaning as we have stated it? It must be borne in mind that, as the contract is prepared solely by the insurer, it must be construed most strongly against the defendant. *Miller v. Insurance Co.,* 31 Iowa, 216; *Same v. Insurance Co.,* 70 Iowa, 704; *Read v. Insurance Co.,* 103 Iowa, 307. The policies were concurrent as to time, though one was for a shorter period than the other. They were concurrent as to the particular property covered by both. In other words, the additional insurance was concurrent in certain respects, though not as to every detail. We are of opinion that the clause, "Other concurrent insurance permitted," in the absence of any limitation in amount, should not be construed to require the later policies to exactly concur in covering all of the property. Otherwise, it should be held that they must also cover all the time. An ordinary man, reading the contract with this clause, in the light of the recognized definitions of "concurrent," would not attribute a meaning to the word such as the defendant insists should be given it; and surely the insured cannot be held to have understood it in such a restricted sense. The reasoning of the court in *Gough v. Davis* (Sup) 52 N. Y. Supp. 947, supports these

views. The authorities determining when insurance is double throw little light on the question. Besides, these are in conflict; the supreme court of Pennsylvania holding that the policies, to constitute double insurance, must cover identically the same property (*Clarke v. Assurance Co.,* 146 Pa. 561 (23 Atl. Rep. 248, 15, L. R. A. 127), while that of New York, in overruling an earlier case, has adjudged it double insurance if one policy includes only a part of the property covered by the other (*Ogden v. Insurance Co.,* 50 N. Y. 388). See *Sloat v. Insurance Co.,* 49 Pa. St. 14; *Insurance Co. v. Hill,* 5 Hill, 298. We discover no error in the record, and the judgment is AFFIRMED.

GRANGER, C. J., not sitting. WATERMAN, J., took no part.