MULROONEY v. ROYAL INS. CO., OF LIVERPOOL, ENGLAND.

(Circuit Court, N. D. Iowa, W. D.   December 6, 1907.)

No. 454.

1. INSURANCE—CONDITIONS IN POLICY—INCUMBRANCE OF PROPERTY.
   A provision of an insurance policy rendering it void in case of an incumbrance on the property, not consented to in writing by the insurer, is reasonable and valid.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 829.]

2. SAME—AGENTS OF INSURER—IOWA STATUTE—"SCOPE OF EMPLOYMENT."
   In Code Iowa 1897, § 1750, which provides that "any officer, agent or representative of an insurance company doing business in this state who may solicit insurance, procure applications, issue policies, adjust losses or transact the business generally of such companies shall be held to be the agent of such insurance companies, with authority to transact all business within the scope of his employment, anything in the application, policy, contract, by-laws, or articles of incorporation of such company to the contrary notwithstanding," the phrase "scope of his employment" has a more restricted meaning than "scope of his agency," and is necessarily limited by the terms of the employment; and when, therefore, an agent is employed to make contracts for his principal only in writing, a verbal contract is beyond the scope of his employment, and is not by the statute rendered binding on the company.
   [Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 6357.]

3. SAME—AVOIDANCE OF POLICY FOR BREACH OF CONDITION—CONSENT TO INCUMBRANCE BY AGENT.
   An insurance policy on a stock of merchandise provided that it should be void "if the subject of insurance be personal property and be or become incumbered by a chattel mortgage," and that no officer, agent, or representative of the company should have power to waive any condition, unless such waiver should be written upon or attached to the policy. The insured executed a bill of sale of the property intended as a mortgage, an assignment of the policy was written thereon to the mortgagee, and the agents of the company made an indorsement thereon, consenting that the interest of the insured "as owner of the property covered by the policy" be assigned to the assignee. Neither indorsement showed the nature of the assignee's interest. *Held,* that such indorsement was not a consent to the incumbrance of the property, and that it could not be varied by parol evidence showing that the agents had knowledge of the nature of the transfer and verbally consented thereto, so as to bind the company by such consent.

At Law.   Action on fire insurance policy.

This cause has been submitted to the court, a jury having been waived in writing, and from the evidence submitted the court finds the facts to be as follows:

(1) That the plaintiff is the duly appointed and qualified trustee in bank-

ruptcy of Oliver O. Kendall, bankrupt, and a citizen of the state of Iowa, residing in the Northern judicial district thereof, and that he and the said Oliver O. Kendall were citizens and residents of said state and district at the time this action was commenced as hereinafter stated.

(2) That the defendant is an insurance company, duly incorporated under the laws of the kingdom of Great Britain and Ireland, and was such at the time this action was commenced, having its principal place of business at Liverpool, England, and a Western department in charge of managers at Chicago, in the state of Illinois, and offices and agencies in the state of Iowa for the transaction of its business in that state, one of which offices and agencies is located at George, in Lyon county, and the firm of Miller & Collmann is and was its agents at said place, with authority to issue policies of insurance and to transact its business at that place, including the authority to indorse in writing upon its policies of insurance the consent of the company to the transfer or incumbrance of the property so insured, and in writing waive the provisions of its policies in accordance with the terms thereof.

(3) That on December 15, 1906, the defendant, through its said agents, Miller & Collmann, in consideration of the sum of $105, duly issued to said Oliver O. Kendall, then of the town of Harris, Osceola county, Iowa, its policy of insurance duly signed by said agents, whereby it agreed to insure him against loss or damage by fire in an amount not exceeding $3,000 for the term of one year from December 12, 1906, upon a certain stock of merchandise then owned by said Kendall, while contained in a certain frame building situate in said town of Harris. A copy of which policy is attached to the petition as part thereof; and contains, among others, the following provisions: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, * * * or if the subject of insurance be personal property and be or become encumbered by a chattel mortgage, * * * or if any change other than by the death of an insured take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise; or if this policy be assigned before a loss. * * * If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto. * * * The insured, as often as required, shall * * * submit to examinations under oath by any person named by this company, and subscribe the same. * * * This company shall not be held to have waived any provisions or conditions of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to * * * any examination herein provided for. * * * This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provisions or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

(4) On February 12, 1907, said O. O. Kendall made and delivered to H. H. Buck a bill of sale of the property so insured, a copy of which bill of sale is also attached to the petition as part thereof and is as follows:

### "Bill of Sale.

"Know all men by these presents, that I, O. O. Kendall, of the town of Harris, in the county of Osceola and state of Iowa, of the first part, for and in consideration of the sum of Seven Thousand Five Hundred dollars ($7,500.00)

to me paid by H. H. Buck of the town of Spirit Lake, county of Dickinson, state of Iowa, of the second part (do hereby sell and convey unto said second party) his heirs, executors, administrators, and assigns, the following described property, to wit: [Describing the property insured.] To have and hold the same unto the said party of the second part, his heirs, executors, administrators and assigns forever. And I do for myself, my heirs, executors, administrators and assigns covenant and agree to and with the party of the second part, his heirs, executors, administrators and assigns, to warrant and defend the sale of said property, goods and chattels hereby made unto the said party of the second part, his heirs, executors, administrators and assigns, against all and every person and persons whomsoever.

"In witness whereof, I have hereunto set my hand, this 12th day of February, 1907. O. O. Kendall."

This instrument was duly acknowledged, and recorded in the proper office on February 18, 1907. At the same time that said bill of sale was made said H. H. Buck and O. O. Kendall made a written agreement, as follows:

"Harris, Iowa, February 12th, 1907.

"O. O. Kendall, party of the first part, and H. H. Buck, party of the second part, contract together as follows:

"(1) First party having today executed to second party a bill of sale of (describing the property insured), said bill of sale being made as security for the certain claims hereinafter specified, the following agreement is made:

"(2) First party may retain possession of said stock during such period as the provisions hereof are complied with, and while so in possession may sell therefrom in the usual course of trade or by daily auctions, subject to the conditions hereinafter stated and only in strict accordance therewith; if the conditions of this agreement be violated second party may forthwith assume possession of said stock and may foreclose said bill of sale as a chattel mortgage. The right to sell as above provided is wholly conditional upon first party depositing in the Harris Savings Bank of Harris, Iowa, the entire proceeds of the previous days sale, less the necessary expenses of operating said store and selling the goods sold, and if the proceeds as above provided be not deposited in said bank by noon of the succeeding day, all right to make sales after noon shall cease.

"(3) The proceeds so deposited in said bank shall not be subject to check but shall be held by said bank and each two weeks or oftener, disbursed as follows: (1) One-third thereof shall be applied upon the note held by said Harris Savings Bank against said Kendall for $2500, until said note be fully paid. (2) Two-thirds thereof shall be paid by said bank to the former creditors of the Harris Mercantile Co., of Harris, Iowa, being the debts of said company assumed by first party as part consideration of said stock aforesaid, payment to be made to such creditors and in such proportion and amount as said first party may elect, receipts to be taken therefor; first party's election to be evidenced by check upon said bank. * * *

"(4) * * *

"(5) * * *

"(6) Should the first party fail to carry out and comply with this agreement, the second party may enforce same by foreclosure as above stated. * * *

"(7) When said claims have been fully paid this agreement shall be canceled and bill of sale given as above shall be surrendered.

"[Signed] O. O. Kendall. "H. H. Buck."

Said agreement was not acknowledged or recorded.

(5) The Harris Savings Bank mentioned in said agreement is a banking corporation organized under the laws of Iowa, located and doing business at Harris, Iowa, and said H. H. Buck is and was its president, and A. E. Buck its cashier. O. O. Kendall was indebted to said bank in the sum of $2,500, and said bill of sale was, in fact, made by him to H. H. Buck to secure said bank and other creditors of Kendall mentioned in said agreement, and was, in fact, a chattel mortgage upon said property, and said H. H. Buck had no other interest therein.

(6) A. E. Buck, the cashier of the Harris Savings Bank, was also the local agent of the defendant insurance company at Harris, and it was through him as such agent that Kendall obtained the policy of insurance in suit from Miller & Collmann, agents of defendant, at George, Iowa. The authority of A. E. Buck as such agent is shown by his certificate of appointment, which is in writing, and is as follows:

"Royal Insurance Company of Liverpool.
"Certificate of Authority.

"Be it known that A. E. Buck, of Harris, in the state of Iowa (is) hereby duly appointed and constituted agent to the Royal Insurance Company of Liverpool, at Harris, Osceola county, Iowa, said appointment to continue during the pleasure of the undersigned managers. As agent (he) is authorized and empowered to receive proposals for insurance against loss or damage by fire and tornado, to receive moneys and to countersign, issue, renew, cancel and consent to transfer of policies of insurance, subject to the rules and regulations of said company, and to such instructions as may be from time to time given by the managers of said company at Chicago, Illinois, but no power is conferred upon said agent to waive any provision or condition of a policy of insurance except such as by the terms of the policy may be the subject of agreement, and such waiver, if any, shall be written upon or attached to the policy of insurance.    *   *   *"

(7) The capital of said Harris Savings Bank was $10,000, and A. E. Buck was the owner of $2,500 of the capital stock thereof.

(8) A. E. Buck knew of the making of the bill of sale by Kendall to H. H. Buck, and of the above-mentioned agreement between them.

(9) On February 12th Kendall delivered the policy of insurance to A. E. Buck, and requested him to get the company's consent to the making of said bill of sale, which he, A. E. Buck, verbally agreed to do, and on February 15th sent the policy by mail to Miller & Collmann at George, Iowa, with the following assignment indorsed thereon:

"Assignment of Interest by Insured.

"The interest of *O. O. Kendall*, as owner of property covered by this policy is hereby assigned to *H. H. Buck*, subject to the consent of the Royal Insurance Company.
"Dated 2/12 1907.                              *O. O. Kendall.*

"Note: To secure mortgagees, if desired, the policy should be made payable on its face to such mortgagee, as follows: Loss if any, payable to John Doe, mortgagee."

(The italicized words were written by A. E. Buck, except signature of O. O. Kendall. The others were in print upon back of policy.)

Inclosed with the policy to Miller & Collmann was a letter of A. E. Buck, as follows:

"Harris Savings Bank.

"Harris, Iowa, Feb. 15, '07.

"Miller & Collmann, George, Iowa—Gentlemen: Herein please find policy #20, O. O. Kendall for $3,000.00 and would ask that you attach a loss clause payable to H. H. Buck, as holder of bill of sale.
"Yours truly,                              A. E. Buck, Agent."

February 18th Miller & Collmann returned the policy to A. E. Buck, and wrote him as follows:

"Agency of the Royal Insurance Company.
"Western Department, Law Brothers, Managers, Chicago.
"Miller & Collmann, Agents, George, Iowa.

"George, Iowa, Feb. 18, '07.

"A. E. Buck, Harris, Iowa—Dear Sir: We are in receipt of the Kendall policy, with request for loss clause payable to H. H. Buck, holder of bill of sale. Should we attach this clause to the policy our people will immediately cancel the policy. We presume the bill of sale is to cover encumbrance or

rather to cover a loan, and while we are new with the Royal we do not think they would care to hold the business with a chattel mortgage or its equivalent on the stock and presume it would be just as well for you to get it placed elsewhere. Of course it might be that the circumstances are such that our people would take it and if you can make it appear satisfactory we will attach a clause and try to have it stick, but it certainly looks bad on the face of it.

"Yours truly, Miller & Collmann."

On February 20th Buck wrote Miller & Collmann as follows:

"Harris Savings Bank.

"Harris, Iowa, Feb. 20, '07.

"Miller & Collmann, George, Iowa—Gentlemen: We have your favor of the 18th inst., returning policy #20, O. O. Kendall, and we note what you say. Herein I hand you the same and will ask that you consent to assignment of this policy to H. H. Buck, as the stock has been transferred to him. This stock is in the same condition as at the time the policy was taken, only that the same has been reduced about Three Thousand dollars, and the insurance has been reduced also $2,000.00 the amount carried at present is $8,000 and the stock will run about $13,000.00.

"Yours truly, A. E. Buck, Agent."

After the receipt of the Miller & Collmann letter of February 18th, A. E. Buck called Miller & Collmann by telephone, and informed them over the telephone that the bill of sale by Kendall to H. H. Buck was intended as security only, and requested them to procure the company's consent thereto, and make the indorsement thereof upon the policy. Whether this conversation by telephone was before or after Buck's letter of February 20th was written is uncertain, but it was before Miller & Collmann made the indorsement and wrote the letter next herein referred to. On February 21st Miller & Collmann made the following indorsement on the policy:

"Consent by Company to Assignment of Interest.

"The Royal Insurance Company hereby consent that the interest of O. O Kendall as owner of the property covered by this policy be assigned to H. H. Buck. "Miller & Collmann, Agent.

"Dated George, Ia., 2—21—1907,"

—and returned it with a letter to A. E. Buck. It was received by A. E. Buck the next day with a letter of Miller & Collmann, dated February 21, 1907, which letter has been lost, and its contents are in dispute. The letter did not consent to the incumbrance nor waive any of the conditions of the policy and was never attached thereto; but Miller & Collmann did in the conversation over the telephone verbally consent to the incumbrance. After the burning of the property, as hereinafter stated, Miller & Collmann endeavored to secure from both of the Bucks their letter of February 18th to A. E. Buck upon the claim that its contents should not be disclosed to defendant.

(10) February 27th the property was totally destroyed by fire through no fault or wrongful or fraudulent act of Kendall, or A. E. Buck, or H. H. Buck. Its actual value at such time was about $8,000, and at such time the property was subject to other valid insurance in solvent companies to the amount of $3,000 concurrent with that of defendant's policy (if it was then in force), which other insurance had been duly assented to by the defendant before the making of the bill of sale.

(11) Miller & Collmann did not prior to such fire inform defendant or its Western department or managers of such bill of sale.

(12) March 12th O. O. Kendall went from Ft. Dodge, Iowa, to Des Moines, Iowa, at his own expense of $ —— at the request of an adjusting agent of the defendant to be examined with reference to said property, the burning thereof and said insurance, and was so examined by said adjusting agent on said date.

(13) April 6th due proofs of loss of said property were made and signed by O. O. Kendall and H. H. Buck, and sent to the managers of defendant at Chicago the same day.

(14) May 1, 1907, Oliver O. Kendall was duly adjudged bankrupt upon his

own petition by the United States District Court in and for the Northern District of Iowa, and the plaintiff was afterwards duly appointed as trustee in bankruptcy of his estate, and is still such trustee.

(15) August 16, 1907, H. H. Buck, who was then a citizen of Iowa and resident of Dickinson county therein, commenced an action in the district court of Iowa in and for Osceola county to recover from defendant the amount of said policy of insurance. The defendant in due time removed said action to this court upon the ground of diverse citizenship of the parties, and the record was duly filed herein; and plaintiff as trustee in bankruptcy of said O. O. Kendall upon his petition therefor was afterwards, by order of the court, duly substituted as plaintiff in lieu of said H. H. Buck, and the action is now prosecuted by him as such trustee.

F. B. Dodge, L. E. Francis, and P. F. Nugent, for plaintiff.
Sullivan & Sullivan, for defendant.

REED, District Judge (after stating the facts as above). The plaintiff as trustee in bankruptcy of Oliver O. Kendall, bankrupt, sues the defendant for $3,000 upon its policy of insurance against loss or damage by fire issued to said Kendall. The defendant admits that it made the policy, and that the property insured was afterwards destroyed by fire as alleged by plaintiff, but denies its liability upon the policy, for the reason, among others, that, after the making of the same, the assured made a bill of sale of the insured property, which was intended as, and in fact was, a chattel mortgage to secure the payment of certain indebtedness owing by him; that defendant never consented to the making of such mortgage, or to the transfer of the property in any other manner or for any other purpose than as indorsed upon said policy; that the making of the mortgage, without its written consent thereto, indorsed upon or attached to the policy, was a violation of the conditions, which conditions defendant has never waived; and because thereof the policy became void before the property was destroyed. The incumbrance of insured property by mortgage or otherwise undoubtedly increases the moral hazard of the risk, and a provision in the policy rendering it void in case of such incumbrance, not consented to in writing by the insurer, is reasonable. The policy in suit contains such a provision, and the property insured was subsequently incumbered by chattel mortgage to an amount nearly equal to its value, which incumbrance, when made, was reported to the local agents of the company who issued the policy, but who did not report the same to the company or to its Western managers, or by writing indorsed upon or added thereto, or otherwise, consent in writing to such incumbrance, or waive any of the conditions of the policy rendering it void because thereof, though they did verbally consent to such incumbrance. The question is: Does such knowledge of the agents, or their verbal consent to the incumbrance, save the policy from lapsing? The policy in plain and unambiguous terms provides that:

"No officer, agent, or representative of this company shall have power to waive any provision or condition of this policy, except such as by its terms may be the subject of agreement indorsed hereon, or added hereto, and as to such conditions and provisions no officer, agent or representative shall have such power or be deemed or held to have waived such condition unless such waiver, if any, shall be written upon or attached hereto, nor shall any provision or condition affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

That the incumbrance of insured property may be the subject of agreement between the assured and the company is not doubted; but the manner of such agreement is plainly provided for in this policy. Like. or similar provisions in policies of insurance .have been the subject of·recent consideration by the Supreme Court of the United States and the Court of Appeals of this circuit in Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, Delaware Insurance Co. v. Greer, 120 Fed. 916, 57 C. C. A. 188, 61 L. R. A. 137. Atlas Reduction Co. v. New Zealand Ins. Co., 138 Fed. 497, 71 C. C. A. 21, 9 L. R. A. (N. S.) 433, and Connecticut Fire Ins. Co. v. Buchanan, 141 Fed. 877, 73 C. C. A. 111, 4 L, R. A. (N. S.) 758. In all of these cases the provisions of the policies involved, in respect of their conditions as to other insurance, incumbrances, non-occupancy of buildings, and the manner of consenting thereto or waiver of conditions, are identical with those of the policy in question.

In Northern Assurance Co. v. Grand View Bldg. Ass'n other insurance existed upon the property at the time the policy was issued, which was known to the agent when he issued the policy, but no written indorsement was made upon or added to the policy consenting to the same or waiving the conditions of the policy in regard thereto when it was written, or at any time afterwards. Two questions were considered by the Supreme Court: (1) Could the knowledge of the agent of the existing insurance be shown by oral testimony in an action at law upon the policy, in the absence of fraud or mutual mistake in making it, for the purpose of avoiding, upon the principle of estoppel, the stipulation against other insurance? (2) Could the agent consent to the other insurance, or waive the condition of the policy rendering it void because thereof, except in the manner provided by the policy? Both of these questions upon an exhaustive review of the authorities English and American are answered in the negative. In Atlas Reduction Co. v. New Zealand Ins. Co. the assured, after the policy was issued, made a mortgage upon the property to Dodge & Stevenson to secure to them the payment of a debt it was owing them. On the same day that the mortgage was made the agents of the company who had negotiated and issued the policy indorsed thereon the following:

"Subject to all the conditions of this policy, loss, if any, payable to Dodge & Stevenson as their interest may appear."

It was held that this indorsement was not a consent to the incumbrance of the property within the terms of the policy, nor a waiver of its condition that it should become void if the property was afterwards incumbered. In Connecticut Fire Ins. Co. v. Buchanan the policy contained the following stipulation:

"This entire policy unless otherwise provided by agreement indorsed hereon or added hereto shall be void * * * if the building herein described * * * be or become vacant or unoccupied."

The building was vacant at the time the policy was issued, and was so known to be by the agent who wrote it. No written indorsement was·made upon or added to the policy when it was made, or after-

wards, consenting to the vacancy or waiving the condition of the policy in regard thereto. It was held that oral testimony showing the knowledge of the agent that the property was vacant when the policy was issued was not admissible to avoid the stipulations of the policy that it should be void if the property insured then was, or afterwards became, unoccupied. In Delaware Ins. Co. v. Greer the policy contained a provision that:

"This entire policy unless otherwise provided by agreement indorsed hereon or added hereto shall be void * * * if with the knowledge of the insured, foreclosure proceedings be commenced * * * by virtue of any mortgage or trust deed of any property covered by this policy."

There was a mortgage upon the insured property, and the company before foreclosure proceedings were commenced at the request of the mortgagees attached to the policy a loss clause as follows:

"Loss, if any, payable to James H. Truskett, mortgagee, as his interest may appear."

Afterwards foreclosure proceedings were commenced which was known to the insured, but no notice thereof was given to the company or the conditions of the policy in regard thereto waived, as provided by the policy. Held that the policy ceased upon commencement of the foreclosure proceedings.

These authorities are, of course, controlling, and must rule the decision of this case, unless its facts are such as to distinguish it from them. It is contended by counsel for the plaintiff that it is to be so distinguished mainly because of section 1750 of the Code of Iowa of 1897. That section is as follows:

"Sec. 1750. * * * Any officer, agent or representative of an insurance company doing business in this state who may solicit insurance, procure applications, issue policies, adjust losses or transact the business generally of such companies shall be held to be the agent of such insurance companies, with authority to transact all business within the scope of his employment, anything in the application, policy, contract, by-laws or articles of incorporation of such company to the contrary notwithstanding."

The meaning of this section and the purpose of its enactment are declared by the Supreme Court of Iowa in Liquid Acid Co. v. Phœnix Insurance Co., 126 Iowa, 225, 101 N. W. 749. As there stated, the purpose of the statute was to prohibit the limitations of the power of the agents by provisions in the contract of insurance. Most of the cases cited refer to waivers of conditions respecting proofs of loss, which conditions rest upon principles different from those upon which the contract of insurance is first to become effective, or afterwards to continue in force. Washburn-Halligan Co. v. Insurance Co., 110 Iowa, 423, 81 N. W. 707, 80 Am. St. Rep. 311. But the power of an agent and the manner in which he shall exercise that power are quite distinct. Mechem on Agency, §§ 407–409. In section 409 it is said:

"The act of the agent, whether he be general or special, within the limits of his authority is binding upon the principal. His act beyond those limits binds himself only, or no one. Hence arises the fundamental necessity that not only the extent but the manner of the execution be such as the authority conferred will warrant, and no other. Where precise and exact limits have been fixed, the performance of the agent should be kept scrupulously within them.

When those limits have not so been fixed, it is still imperative that the reasonable and usual limits in such cases be determined, and that the manner and extent of the execution be made to conform to them."

Contracts between the company and the assured that they shall be bound by the agreements of agents only when made in writing are reasonable, and for the benefit of both parties, and necessary to protect them against the mischiefs and uncertainties of oral testimony, which cannot otherwise be guarded against. Northern Assurance Company v. Grand View Building Association, 183 U. S. 308, 318, 347, 364, 22 Sup. Ct. 133, 46 L. Ed. 213; Ruthven v. Insurance Co., 92 Iowa, 316, 60 N. W. 663; Taylor v. Insurance Co., 98 Iowa, 521, 67 N. W. 577, 60 Am. St. Rep. 210; Kyte v. Assurance Co., 144 Mass. 43, 10. N. E. 518. Assuming, without deciding, that the Legislature may rightly forbid the company and the assured from contracting that the agent shall bind the company only by agreements in writing, the statute does not attempt to, and does not, in fact, forbid their doing so. It only provides that persons acting in the capacity there specified for an insurance company shall be held to be the agents of such company with authority to transact all business within the scope of their employment. The phrase "scope of the employment" has a more restricted meaning than "scope of the agency," which might include any acts reasonably necessary to effect the objects of the agency; but the scope of the employment is necessarily limited by the terms of the employment. Mechem on Agency, § 308; Baring v. Peirce, 5 Watts & S. (Pa.) 548, 40 Am. Dec. 537: Snow v. Warner, 10 Metc. (Mass.) 132, 43 Am. Dec. 417; Craighead v. Peterson, 72 N. Y. 279, 28 Am. Rep. 150; Graves v. Horton, 38 Minn. 66, 35 N. W. 568; Hodge v. Combs, 1 Black, 192, 17 L. Ed. 157. In section 308, Mechem on Agency, it is said:

"So a formal instrument conferring authority will be strictly construed, and can be held to include only those powers which are expressly given, and those which are necessary, essential, and proper to carry out those expressly given"—citing many authorities.

In Snow v. Warner, 10 Metc. (Mass.) 132, 43 Am. Dec. 417, it is said:

"An agent, appointed by a writing which defines and limits his authority, is subject to its terms; and acts done by him, not within the scope of the authority, cannot bind his principal; and a person who trades with such agent must examine for himself whether the agent is acting under written instructions, and the principal will not be bound because such person was ignorant of their existence."

When, therefore, an agent is employed to make contracts for his principal only in writing, then verbal contracts by him are beyond the scope or range of his employment. This statute only prohibits the company from denying that persons acting for it as specified therein are its agents authorized to transact its business within the scope of their employment, and leaves the company and the assured free to provide in their contract that the company shall be bound by the agreements of its agents only when made in writing indorsed upon or added to the policy, which then becomes the sole repository and memorial

of their final agreements.    That this section was not intended to pro-
hibit such agreements is obvious from the provisions of section 1743
of the Code as amended, which is as follows (Code Supp. 1902) :

"Sec. 1743. Any condition or stipulation in an application, policy or con-
tract of insurance making the policy void before the loss occurs shall not pre-
vent recovery thereon by the insured, if it shall be shown by the plaintiff
that the failure to observe such provision or the violation thereof did not con-
tribute to the loss; provided, however, that any condition or stipulation re-
ferring to any other insurance, valid or invalid, or to the vacancy of the in-
sured premises or the title or the ownership of the property insured or to
liens or incumbrances thereon created by voluntary act of the insured and
within his control, * * * or to the assignment or transfer of such policy
of insurance before loss without the consent of the insurance company, * * *
shall not be changed or affected by this provision."

Section 1750 was first enacted in 1880 and amended in 1897 as it
now appears, and it has never been suggested until since the decision
in Liquid Acid Co. v. Insurance Co. that it prohibited insurance com-
panies from providing in their policies that they should be bound by
the agreements or waivers of their agents only when in writing and
made part thereof.    In the absence of a direct holding of the Supreme
Court of the state that it does prohibit them from so doing, this court
will not first so hold.

A. E. Buck was the soliciting agent of the company for the policy
in question, and Miller & Collmann issued and countersigned the same.
The authority of each to consent to the subsequent incumbrance of
the property insured is in plain terms limited to their doing so in
writing "indorsed upon or added to the policy."    It would not be con-
tended that either of these agents could bind the company by a verbal
contract of insurance in the first instance.    The verbal consent to the
incumbrance of the property insured is equally beyond their authority.
Garretson v. Insurance Co., 81 Iowa, 727–729–730, 45 N. W. 1047.
The policy involved in Liquid Acid Co. v. Phœnix Ins. Co. is differ-
ent from the one here involved, or those involved in the cases above
cited.    It contained a clause that:

"No officer, agent or other representative of the company, except the gen-
eral manager in Chicago, shall have the power to waive, change or modify any
of its provisions or conditions, etc., and he only in writing endorsed upon
or added to the policy."

This denied all authority of the local agent who solicited the in-
surance and issued the policy, in direct violation of section 1750 of the
Code, which the Supreme Court of Iowa says was the evil intended to
be remedied by that section.    The policy did not contain any provi-
sion that the local agent should agree to incumbrances, other insur-
ance, or the like, or waive any of its conditions, only in writing in-
dorsed upon or added thereto; and, as under the statute he must be
deemed the agent of the company, it therefore resulted in that case
that the verbal consent and waiver by the local agent were binding upon
the company.    In Connecticut Ins. Co. v. Buchanan, above, in referring
to this case, a distinction is suggested between conditions upon which
the contract of insurance is to become effective in its inception, and
those which relate to the waiver by the agent of conditions subse-
quently arising.    But there seems to be no valid reason for distinguish-

ing between agreements or conditions upon which the contract is to become effective in the first instance and those upon which it is to continue in force, when, because of changed conditions, it would become void if they were not consented to. Both are of the essence of a live contract of insurance. Carpenter v. Insurance Co., 16 Pet. (U. S.) 495, 10 L. Ed. 1044; Worcester Bank v. Hartford Ins. Co., 11 Cush. (Mass.) 265, 59 Am. Dec. 145. There are reasons for a distinction between such conditions and those which relate to performance after a loss has occurred, or are conditions precedent to the maintenance of an action to recover for the loss. In Washburn-Halligan Co. v. Insurance Co., 110 Iowa, 423, 81 N. W. 707, 80 Am. St. Rep. 311, such distinction is made; and in speaking of provisions like those in question, the court says:

"This stipulation relates to the conditions and provisions of the policy, and not to their performance; or, as put in numerous authorities, it 'applies only to those conditions and provisions in the policy which relate to the formation and continuance of the contract of insurance, and are essential to the binding force of the contract while it is running, and does not apply to those conditions which are to be performed after the loss has occurred, in order to enable the assured to sue on his contract, such as giving notice and furnishing preliminary proofs.' We believe it to have been uniformly so held when attention has been directed to this particular point. * * * The conditions contemplated are of the essence of and form a part of the contract of insurance, upon which its continuing force depends. Under a valid policy, liability attaches on the happening of the loss, and evidently the requirement of proofs of loss pertains not to the provisions of the policy, but to the performance of them."

It is clear that A. E. Buck was the agent of the defendant and authorized to consent in writing to the incumbrance of this property, and the continuance of the insurance thereon, unless his interest as stockholder of the bank for whose benefit the bill of sale was made would prevent him from so doing (Arispe Mercantile Co. v. Capital Ins. Co., 110 N. W. 593, 9 L. R. A. [N. S.] 1084); but he did not do so, and referred the matter to Miller & Collmann, under whom it seems he was acting, and informed them of the purpose of the bill of sale. They also were authorized to consent in writing to such incumbrance, and so waive the conditions of the policy, but, instead of doing so upon being informed of the purpose of the bill of sale, they made the following indorsement upon the policy:

"Consent by Company of Assignment of Interest.

"The Royal Insurance Company hereby consents that the interest of O. O. Kendall, as owner of the property covered by this policy be assigned to H. H. Buck.          [Signed]          Miller & Collmann, Agent."

This is not a consent to the incumbrance (Atlas Reduction Co. v. New Zealand Ins. Co., 138 Fed. 497, 71 C. C. A. 21, 9 L. R. A. [N. S.] 433; Delaware Ins. Co. v. Greer, 120 Fed. 916, 57 C. C. A. 188, 61 L. R. A. 137), but a consent to the transfer of the title of Kendall as owner of the property to H. H. Buck, and, at most, to the continuance of the insurance to him as such owner. The company might be content to continue the insurance in favor of the absolute owner of the property when it would not do so upon the property becoming incumbered. The distinction is plain, and the difference in the hazards of the risk obvious. But the indorsement made by the agents is the only

competent evidence of what they agreed to, and cannot be varied by oral testimony. Northern Assurance Co. v. Grand View Bldg. Association, supra; Elliott v. Farmers' Ins. Co., 114 Iowa, 153, 86 N. W. 224. If Gurnett v. Atlas Insurance Co., 124 Iowa, 547, 100 N. W. 542, can be construed as supporting plaintiff's contention, then it conflicts with Northern Assurance Co. v. Grand View Bldg. Association above, and in this jurisdiction it must yield to that case. If the bill of sale was in fact, as it is in form, an absolute transfer of the property to H. H. Buck, then he became the absolute owner of this property, and after this indorsement the insured, and Kendall thereafter had no interest in the property, or in the insurance thereon, and none passed upon his subsequent bankruptcy to the plaintiff as his trustee. If it is in fact a mortgage, as it is shown to be, then the interest of H. H. Buck in the property was "other than the unconditional and sole ownership," and the insurance as to him might cease under that condition of the policy—a question, however, that it is not necessary to now determine. In any view that can be taken of the matter, the policy as to Kendall had terminated before the destruction of the property.

The plaintiff further contends that defendant is estopped from disputing the validity of the policy because of the acts of its adjusting agent in examining Kendall and H. H. Buck with reference to the bill of sale and the loss after the fire. But the policy expressly provides that such an examination shall not be a waiver of the conditions of the insurance. Aside from that, however, the testimony fails to show that the company is estopped because of any act of its adjuster.

The plaintiff is not therefore entitled to recover, and the judgment must be for defendant for costs. It is so ordered.