SARAH M. HARRIS, Respondent, *v.* WILLIAM TUMBRIDGE, Appellant.

In an action upon a contract the General Term has power, on appeal from a judgment for plaintiff, to amend the complaint so as to make it conform to the terms of the contract as proved upon the trial. (Code of Civil Procedure, § 723.)

Plaintiff purchased, through the agency of defendant, a stock option or privilege known as a "straddle," which secured to her the right to demand of the seller, at a price stated, a certain number of shares of a specified stock, or to require him to take said stock at the same price, within sixty days. Plaintiff was induced to make the purchase by printed circulars issued by defendant, explaining the nature of a

" straddle," offering to purchase one of his selection upon payment of a specified sum, and guaranteeing that fluctuations in the stock during the pendency of the contract would amount to eight per cent, and in case it did not, agreeing to refund the amount paid, less commissions. Plaintiff authorized defendant, as her agent, to exercise the option. On the next day after the purchase defendant sold the stock " short," which resulted in a loss. In an action to recover damages, *held*, that defendant had no authority to make the sale ; that in the absence of any directions from plaintiff it was defendant's duty to have closed the contract by exercising the option at the most favorable time, and to have acted for her in that respect with reasonable care ; that the question of negligence and want of skill and care in the performance of his duty as agent was properly submitted to the jury, and authorized a recovery.

Defendant claimed on appeal that this was a gambling transaction, and as such prohibited by statute. No such defense was set up in the answer. *Held*, that the contract was not of necessity a wager contract ; that this was for defendant to prove; and that the fact that it might have been so did not dispense with the necessity of proving that it was.

The price of the stock from day to day during the sixty days was shown. *Held*, that the question as to the amount of damages was for the jury.

Defendant offered evidence that it was common for parties purchasing " straddles " to operate in stock, holding the straddle as security ; this was excluded, and the court charged that plaintiff, in order to be bound by any such custom, must have been aware of it. *Held*, no error.

A custom or usage in a business will not bind the parties to a contract unless it appears they had knowledge of its existence, or that it is so general that they must be presumed to have contracted with reference to it.

(Submitted November 12, 1880 ; decided December 1, 1880.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made May 29, 1879, affirming a judgment in favor of plaintiffs, entered upon a verdict.

This action was brought against defendant, a stock broker, to recover damages for alleged unauthorized acts, negligence and want of skill as agent of plaintiff in a stock transaction, the particulars of which and the material facts are set forth in the opinion.

*Brewster Kissam* for appellant. Where a judge leaves it to a jury to infer a fact not warranted, it is error, and a new

trial will be granted. (*Gale* v. *Wells*, 12 Barb. 84; *Harris* v. *Wilson*, 1 Wend. 511; *Story* v. *Brennan*, 15 N. Y. 524; *Milbank* v. *Dennistoun*, 21 id. 386.) A refusal at the Circuit to allow an amendment setting up an entirely new defense, is not a subject for exception available on appeal from the judgment. (*People* v. *Sandman*, 11 Hun, 166.) Where an agent has used reasonable diligence and skill he is not liable for accidents, or losses or damage happening without his default. (Story on Agency, p. 234, § 185; p. 235, § 188; p. 245, § 199; *Milbank* v. *Dennistoun*, 21 N. Y. 386; *Heinemann* v. *Heard*, 50 id. 27; 1 Wait's Actions and Defenses, 241, 243.) Plaintiff must affirm the transaction in whole or repudiate it in whole. (Story on Agency, p. 310, § 250.) Plaintiff ratified defendant's act in making the short sale of stock. (Story on Agency, p. 298, § 239; p. 304, § 243; p. 317, § 258; *Commercial Bank, etc.*, v. *Warren*, 15 N. Y. 557; *Meehan* v. *Forrester*, 52 id. 277; *Hawley* v. *Keeler*, 53 id. 114; *Sturgis* v. *N. J. S. B. Co.*, 62 id. 625.) The motion for a new trial, because the verdict is contrary to law, raises all questions that could have been considered on a motion for a nonsuit, or a motion to direct a verdict for appellant. (*Wehrum* v. *Kuhn*, 34 N. Y. Supr. 336; *Halpin* v. *Third Ave. R. R. Co.*, 40 id. 175; *Wehle* v. *Haviland*, 4 Daly, 550.)

*Frederic A. Ward* for respondent. Defendant, when he entered into this engagement, bound himself not only to good faith, but to at least such skill as is ordinarily possessed by brokers in the same business. (*Heinemann* v. *Heard*, 50 N. Y. 27.) The question whether he exercised such skill is a question of fact for the jury. (Story on Agency, 183, 186; 50 N. Y. 27, 35.) Defendant was bound to wait at least a reasonable time for a fluctuation in the price before selling. (*White* v. *Smith*, 54 N. Y. 522.) The proper measure of damages is the amount the plaintiff has lost by reason of defendant's breach of duty; the profit she would have made if defendant had acted honestly and properly. (*White* v. *Smith*, 54 N. Y. 525; *Baker* v. *Drake*, 66 id. 518.) The court, at General Term, had un_

questionable power to treat the complaint as amended, so as to conform to the facts proved in support of the judgment and in furtherance of justice. (*Clark* v. *Dales*, 20 Barb. 67; *Bate* v. *Graham*, 1 Kern. 237; *Pratt* v. *Hudson R. R. R. Co.*, 21 N. Y. 305; *Harrower* v. *Heath*, 19 Barb. 331.)

FINCH, J. The plaintiff in this case, a lady living in the country, ventured upon a speculation in stocks, and lost her money. She sued her broker and was awarded damages by a jury, upon whose verdict the judgment was entered from which this appeal is taken.

The plaintiff bought, through the agency of defendant, a stock option or privilege, known in the language of brokers as a "straddle." The word, if not elegant, is at least expressive. It means the double privilege of a "put" and "call;" and secures to the holder the right to demand of the seller at a certain price within a certain time a certain number of shares of specified stock, or to require him to take, at the same price within the same time, the same shares of stock. The continuance of the option is fixed by the agreement, and in this case was for sixty days. The value of a "straddle," it is proven, depends upon the fluctuations of the stock selected. The wider the range of these fluctuations, whether up or down, the greater the amount which may be realized; and of course the longer the option continues the greater the chance of such fluctuations during the period. The plaintiff swears that she was led into the purchase of the "straddle" in question by certain printed circulars of the defendant which she produced. Of course they point out an easy and rapid road to wealth for any one who is careful in his choice of a broker, but the material point in them is that they describe a "straddle," explain its dependence for success upon the fluctuations of the selected stock, and offer to any one who will purchase a sixty-day "straddle" of the defendant's selection, paying therefor $400, and $25 more for commission, a guaranty that the aggregate fluctuation in the stock, during the pendency of the contract, will amount to eight per cent; and further promise that if the stock does not move

to that extent, the cost of the contract less commissions shall be refunded. The plaintiff probably did not quite understand the proposition, but thinking it entirely safe, borrowed the necessary $425 with which to make the venture. She inclosed the draft to Tumbridge & Co. to invest in a sixty-day straddle-contract under their guaranty. She adds that she had invested twice before and lost her money. Made cautious by that ill fortune, she expressly adds, "If I do not understand this new arrangement of yours aright, and there is any danger whatever that I will lose the $400, then do not invest it at all until you can inform me, for I have borrowed the amount from bank and would not be able to meet payment as soon as due." The defendant answered acknowledging the receipt of the check. and saying, "We do not see how you can lose any thing on such an arrangement as we propose," and then selecting Lake Shore or Western Union as the stock for the venture, he gave her a choice between the two. On the 13th of September the plaintiff answered by a telegram, "I leave the situation with you," and on the next day the defendants wrote her that they had purchased for her account a straddle-contract on 100 shares Lake Shore at 62¾. On the next day after, the defendant sold the stock "short" against the "straddle," and this act of his is assailed on the part of the plaintiff as unauthorized, negligent and unskillful, and defended on the part of the broker as prudent and customary, and ratified by his principal. The result of the short sale was represented by the defendant to have been unfortunate and left the plaintiff with her money gone and owing the broker $9.

It is made very apparent by the evidence that the only right of the defendant, as the agent of the plaintiff, after the purchase for her of the "straddle" contract, was to exercise the option secured by it at such time within the sixty days as she might direct, or, if no instructions were given, and the "situation" was left to his care, then to exercise that option at such time within the sixty days as, taking into view the state of the market, appeared to be prudent and proper. In no event had he the right to involve the plaintiff in another and distinct

speculation, having no necessary connection with the "straddle" contract, except that, as the evidence seems to show, it had the effect to "neutralize" one part of that contract. The defendant puts his right to make the short sale complained of upon several grounds. The first is, that he was authorized, by the terms of the contract, holding the "straddle" as margin, to operate for the plaintiff in the purchase and sale of the selected stock. The arrangement between the parties is contained wholly in their correspondence. That does not at all justify such an inference. The defendant himself did not so understand the contract. In his letter announcing his action in the purchase of the "straddle" he says, "which contract we hold for closing, and, in the absence of any further instructions from you, we will exercise our best judgment in closing at the most favorable time." There is here no assumption of a right to operate in stocks, holding the "straddle" as margin, but a distinct recognition of his real duty. That was, in the absence of specific instructions, to close the option held for the plaintiff at what seemed the most favorable time.

The further ground was taken that the right to operate generally, against the "straddle" held as margin, was conceded by the complaint. In that respect the complaint was amended by the General Term so as to make it correspond with the actual facts of the contract as developed by the evidence. The power of the court to make such amendment is conceded in a proper case, but claimed to have been improperly exercised in this. Practically, the only limitation upon the right to amend the pleadings is that a new cause of action must not be introduced. (Code of Civ. Pro., § 723; Reeder v. Sayre, 70 N. Y. 180.) The amendment did not effect such a result. The cause of action for negligence and want of skill in the performance by the defendant of his duty as agent remained unchanged. A misstatement of the details of the contract was all that was changed, and it was stricken out from the pleading as unnecessary to the cause of action stated, and to some extent inconsistent with it. If the order granting the amendment is re-

viewable on this appeal, which admits of question, we see no reason to doubt its correctness and propriety.

With this understanding of the contract between the parties, and their relative rights and duties, we are prepared to test the objections made to the recovery.

It is urged that the question of authority to make the "short" sale should not have been submitted to the jury, and that they should have been directed, under the issues joined, not to consider it. But the question of authority was raised by the defendant himself. His sale of the stock "short" within a single day of the purchase of the "straddle" was assailed as negligent. He claimed in his defense that the act was within his authority and was ratified by the plaintiff. The question thus raised became a material issue in the case, and bore directly upon the ultimate question of defendant's diligence or negligence in the performance of his duty.

He complains that there was no evidence of such negligence, or of any want of skill or care on his part, and therefore that question should not have been submitted to the jury. But it is clear that there was such evidence. The plain object of the "straddle" was to secure the benefit of the possible fluctuations of sixty days. His own description of the character of such a privilege and of the greater safety of such a double option, and his guaranty of eight per cent of aggregate fluctuations, all indicated that as the essential merit of the "straddle." This contemplated benefit, the possibility and probability of profit from it the defendant threw away. He waited but a single day. He at once neutralized one-half of the option, and by so doing increased the chances of loss. He did this without plaintiff's authority and to her manifest disadvantage. The course of the stock market through the sixty days apparently shows that if he had reasonably waited its development and then exercised the option secured by the "straddle," he might have closed the contract when the stock had sufficiently advanced to have returned the plaintiff her original investment and a fair profit beside. Experts, however, familiar with the stock market, testified on both sides, and the question of

negligence and want of skill thus raised was peculiarly within the province of the jury, and their conclusion we cannot review.

The appellant further insists that his sale of stock " short " was ratified by the plaintiff. We have already suggested the answer. She could not ratify without knowledge, and denies that she even knew of the sale. The broker swears that he sent her by mail an announcement of the fact, but she swears she never received any such letter. The jury had the right to believe the plaintiff's statement, and we cannot disturb their conclusion.

It is next argued that this was a gambling transaction, and as such prohibited by statute. It may have been, but there is no proof that it was, and no such defense was pleaded. The contract was not of necessity a wager contract. That it might have been does not at all dispense with the necessity of proving that it was. The evidence now relied on is contained in a description of a " straddle " given by the witness Landon. He describes it first, and then adds, " in other words it is a bet that the stock will fluctuate so much." He speaks of a " straddle " generally. He does not speak of the actual transaction between these parties at all. As to that there is no proof of its character as a mere wager. We cannot supply it by suspicion or infer it from the making of a contract not necessarily within the prohibition.

An objection is taken to the rule of damages. It is insisted that as plaintiff never gave any directions to " put " or " call " the stock, she should not have recovered as if she had. But in the absence of such directions it was defendant's duty, under the circumstances of this case, as we have already said, to have closed the " straddle " contract by exercising the option at the most favorable time, and to have acted for her in that respect with reasonable care and skill. As he did not do so, she is entitled to recover what she has lost by his neglect, and the price of the stock from day to day during the running of the option having been shown, it was for the jury to determine

that amount. (*Baker* v. *Drake*, 66 N. Y. 518; *White* v. *Smith*, 54 id. 525.)

The exceptions to the ruling which excluded proof that it was common for parties purchasing "straddles" to operate in stocks, holding the "straddle" as security; and to the charge of the court that the plaintiff must have been aware of the custom or usage among brokers, in order to bind her by such custom, were not well taken. No custom, or usage, such as to modify the contract, or become inwoven with its terms, was in any manner shown. The drift of the evidence is that there is no general rule or custom for operating in stocks, but each dealer acts on his own judgment. That contracts for the use of a "straddle," in a manner different from that contemplated by the agreement of these parties, were more or less common, was wholly immaterial; and a custom or usage which binds the parties to a contract does so only upon the principle either that they have knowledge of its existence or that it is so general that they must be supposed to have contracted with reference to it. Both rulings were, therefore, correct.

Some remaining objections to the admission and exclusion of evidence, we have examined, without finding in them any sufficient reason for disturbing the result of the trial.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.