(24 Misc. Rep. 245.)

### GOUGH v. DAVIS.

(Supreme Court, Trial Term, Queens County. July, 1898.)

**1. INSURANCE—CONSTRUCTION OF POLICY—OTHER CONCURRENT INSURANCE.**
A policy providing that the procurement of additional insurance, except by agreement with the insurer, should avoid it, recited that "permission is hereby given for other concurrent insurance." *Held*, that the policy was not made void by other insurance covering only a part of the property insured by it.

**2. SAME—PROOF OF LOSS—FALSE SWEARING.**
A policy required insured to make sworn proof of loss, stating all other insurance covering the property, and any fraud or false swearing by him was to avoid it. The underwriters of another policy covering the same property notified insured of their intention to cancel it, but this was not done until after the fire. Insured procured another policy, which was to replace the one about to be canceled, and notified defendant insurer. The proof of loss gave the new policy, but did not mention the one intended to be canceled. *Held*, that defendant's policy was not thereby made void.

**3. CUSTOM—EFFECT ON CONTRACTS.**
Before a custom can enter into a contract, both parties must have knowledge of it.

Action by Arthur E. Gough against Jacob Davis to recover from him his proportion of a loss under a fire insurance policy issued by defendant and others under the name of Electric City Lloyds. Judgment for plaintiff.

Arthur S. Luria, for plaintiff.
George H. Pettit, for defendant.

GAYNOR, J. We have in this state established by law (Insurance Law, § 121 et seq.) a standard policy of fire insurance. It is a printed form of fire insurance policy filed in the office of the secretary of state, which has to be conformed to and used by all fire insurers doing business in this state. Instead of contracts of insurance differing in their provisions and conditions, we have by means of this standard policy, uniform policies of insurance, and this now sued upon is one of them. It is a criminal offense to use any other. Pen. Code, § 577d; Laws 1892, c. 692. One of the conditions is as follows: "The entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." The policy now sued upon covers the buildings of a factory, and also all of the machinery therein. It provides for other insurance in these words: "Permission is hereby granted for other concurrent insurance." Other policies were procured covering all of the same prop-

erty, and still other policies which did not cover it all, but only specific parts of it. It is claimed by the defendant that the permission for "other concurrent insurance" only permitted other policies covering all of the property, and did not permit these latter policies which cover only specific parts of it, and that therefore the procuring of them makes the poilcy sued upon void. We have therefore to determine the meaning of the phrase "other concurrent insurance." If the permission had been for "other insurance," no difficulty would be presented, for that has long been the customary phrase. But are the words "other concurrent insurance" as broad? The policies which did not concur in covering all of the property covered by the policy in suit were not in that sense "concurrent" with it. If this be the true meaning of that word as used in the contract, then the policy sued upon was made void by the act of the insured in procuring such nonconcurring policies. The object was to give the insured permission to have other insurance on the property during the existence of the policy. This would be concurrent insurance in respect of time and of the property. It would be concurrent in respect of time though for a shorter period than that of the policy, and in respect of the property though not upon all of it. It would not be wholly but only partly concurrent, and that, I think, is sufficient in order to be within the terms of the permission. It does not seem to me that the insured could be expected to understand that the word was used in the precise and restricted sense that the additional policies must exactly concur in covering all of the property any more than all of the time. It is true that the meaning I adopt would all be expressed in the words "other insurance," and that therefore the word "concurrent" adds nothing, and is purely tautological; but that is nothing unusual.

The prohibition in insurance policies against other insurance except by consent of the insurer is to avoid the moral hazard involved in the case of persons morally capable of insuring heavily, or overinsuring, for the purpose of setting fire to the property, and permission for other insurance is naturally understood as only intended to nullify such prohibition. No one would suspect any lurking reservation in it for some other purpose. It is contended in the case at bar, however, that the permission for other insurance was intentionally restricted to "concurrent" insurance for the purpose of avoiding the difficulty of apportioning the loss among different insurers where some of the policies cover all of the property and others cover only specific parts of it. If insurers want to express such a meaning and make such a contract in order to do away with an old inconvenience by the severe alternative of a forfeiture, they should do it unequivocally, for that is the rule applicable. If the words used are uncertain, or reasonably susceptible of two constructions, the construction of the insured will be upheld. Herrman v. Insurance Co., 81 N. Y. 184; May, Ins. § 175. And it is even more than doubtful whether the word "concurrent" will bear the force given to it by the defendant at all. The phrase "double insurance," which is growing obsolete, meant two or more policies on the same interest in the same property (Id. § 13), like this new phrase "concurrent insurance." It was formerly held in this state that to be double insurance the policies had to be upon

precisely the same property, the same as is now claimed in respect of concurrent insurance (Insurance Co. v. Scribner, 5 Hill, 298); but this decision was afterwards overruled, and the contrary held (Ogden v. Insurance Co., 50 N. Y. 388). If policies upon all and policies upon specific parts of the property are double insurance I do not perceive why they are not concurrent insurance. I find the word "concurrent" used by two text writers without any apparent thought of its being restricted to policies each of which covers all of the same property (May, Ins. §§ 13, 366; Joyce, Ins. § 3460); by one text writer in such restricted sense, but only casually (Richards, Ins. § 164), and by another who says it has a "somewhat technical meaning," which he quite fails to state with any definiteness (Ostr. Ins. § 248). I have found no case deciding the point. The defendant called witnesses to prove that in the insurance business the word has the established technical meaning which he contends for, but their evidence failed to prove that insurers generally so understand it, let alone those who procure insurance. In order that a custom or usage may enter into the meaning of a contract, both sides must have been aware of it, and thus contracted with reference to it. Harris v. Tumbridge, 83 N. Y. 92; Long v. Armsby Co., 43 Mo. App. 253.

There is a provision in the policy that it shall be void "in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." Another provision requires the insured to state in his sworn proofs of loss "all other insurance, whether valid or not, covering any of said property." The insured omitted from the proofs of loss a policy procured the same day and running the same time as the one in suit. But nine days before the fire the insurers to that policy notified the insured that they had gone into liquidation, and recalled all policies for cancellation. Thereupon the insured at once acted upon the notification by procuring other insurance instead, of which they notified the insurers. All that was left was to hand in the recalled policy and have it marked canceled. This was not done until after the fire. The substituted insurance was set out in the proofs of loss. It is contended that by a recent decision (Tisdell v. Insurance Co., 155 N. Y. 163, 49 N. E. 664) the policy was still valid and subsisting at the time of the fire, the unearned premium not having been refunded. The insured might have taken the position that they would not allow a cancellation until such refund, but they did not; on the contrary, they acquiesced in treating the policy as at an end. But regardless of what their technical legal position was at the time of the fire in respect of the said policy, it is obvious that it was not fraudulently omitted from the proofs of loss, but wholly in good faith; and it is equally clear that intentional false swearing or perjury could not be based upon such omission. Richards, Ins. § 137.

Judgment for the plaintiff.