GLOBE & RUTGERS FIRE INS. CO. v. ALASKA-PORTLAND PACKERS' ASS'N.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1913.)

No. 2,199.

INSURANCE (§ 336*)—"CONCURRENT INSURANCE"—WHAT CONSTITUTES.

> Where a policy covering a salmon cannery, wharves, platform, material, and supplies, etc., contained a rider, "Other concurrent insurance permitted," without limitation or other stipulation, the term "concurrent insurance," was not limited to policies sustaining the same measure of liability, but meant insurance running with defendant's policy which to any extent insured the same interest against the same casualty at the same time; and hence defendant's policy was not avoided by the fact that plaintiff also procured Lloyd's insurance and a marine policy covering the same property, but not subject to the same liability.

> [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 856–873; Dec. Dig. § 336.*

> For other definitions, see Words and Phrases, vol. 2, p. 1391.]

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action by the Alaska-Portland Packers' Association against the Globe & Rutgers Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error, through its brokers, M. C. Harrison & Co., procured of the plaintiff in error a fire insurance policy for $5,000 on a salmon cannery at Nushagak, Alaska, and the property therein situate, consisting of material and supplies for packing salmon, together with salmon pickled and canned in the cannery and on the wharves and platforms connected therewith. The policy was for the term of one year from May 1, 1910, at noon. It contained a provision that, unless otherwise provided by permission indorsed thereon or added thereto, the entire policy should be void "if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy"; but attached to the policy was a slip containing this provision: "Other concurrent insurance permitted." At the time of taking out the policy, the defendant in error, through its brokers, took out similar policies of fire insurance in different amounts with four insurance companies, and subsequently, on May 15, 1910, it procured other policies of marine insurance from the St. Paul Fire & Marine Insurance Company, and what are known as "Lloyd's," upon the cannery on Bristol Bay and on the ship Berlin, including fire risk from midnight of date of sealing of tins or barrels of salmon. The cover notes of the Lloyd's insurance contain the following warranty:

---

"Warranted free from particular average unless the vessel be stranded, sunk, burnt, on fire, or in collision"—and all the policies of marine insurance contain similar provisions. On August 10, 1910, the property covered by the fire insurance policies and by the marine insurance policies was largely destroyed by fire. The plaintiff in error, in its answer to the complaint, in the action brought to recover on its policy, denied liability, on the ground that its policy had been voided by the procurement of the marine insurance; the contention being that such insurance was not within the permission of the slip which was attached to the first policy, providing "Other concurrent insurance permitted." At the conclusion of the taking of the testimony, the plaintiff in error moved for a directed verdict in its favor, on the ground that the permission indorsed upon the slip attached to the face of its policy had been forfeited, first, by the procurement of the Lloyd's insurance; secondly, by procuring the St. Paul Fire & Marine Insurance Company's policy. The court overruled the motion, and refused to instruct the jury, as requested by the plaintiff in error, that its policy of insurance had been voided by the procurement of the Lloyd's policies, and the St. Paul Fire & Marine Insurance Company's policy, and that such insurance was not concurrent with insurance permitted by the terms of the policy in suit. The court charged the jury "that the policies taken out by the plaintiff company in the Lloyd's and the St. Paul were concurrent within the meaning of these policies, and therefore the defense that the policies were voided because of such insurance is not sustained." The jury returned a verdict for the defendant in error, and judgment was thereupon entered.

Ira A. Campbell, Edward J. McCutchen, and McCutchen, Olney & Willard, all of San Francisco, Cal., and John M. Gearin and Dolph, Mallory, Simon & Gearin, all of Portland, Or., for plaintiff in error.

Carey & Kerr, of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the marine insurance, while it covered the same property and insured against the same risk as the policy issued by the plaintiff in error, is not "concurrent" insurance within the permission of the policy issued by the latter, for the reason that the liability is not the same; that while the liability on the fire insurance policies is for all loss, both partial and total, which might occur by fire, the liability under the marine insurance is only for a total loss, and protects against no partial loss, however great it might be; and that fire losses under marine insurance contracts are subject to adjustment only as marine insurance losses are adjusted.

We are brought, therefore, to the question: What is "concurrent insurance," as those words are used in the contract? The word "concurrent," while its primary meaning is "running with," is used in different senses. It does not appear that in insurance contracts it has any settled, definite, technical meaning. But few insurance cases are reported in which the courts have been called upon to determine its meaning.

The plaintiff in error relies upon New Jersey Rubber Co. v. Commercial Union Assur. Co., 64 N. J. Law, 580, 46 Atl. 777. In that case there were two defenses—one resting on the terms of the policy; the other resting on an agreement made before the policy was issued. The policy insured certain property against loss by fire, and it contained a provision against other insurance similar to that in the pol-

icy in the case at bar, and a rider permitting "other concurrent insurance." The concurrent insurance which was procured covered only a portion of the property. Defining the provision permitting concurrent insurance, the court said:

"Concurrent insurance is that which to any extent insures the same interest, against the same casualty, at the same time, as the primary insurance, on such terms that the insurers would bear proportionally the loss happening within the provisions .of both policies. It is this last quality, of sharing proportionally in the loss, that distinguishes concurrent insurance from mere double insurance."

And the court held that the additional insurance, although it covered only a portion of the property, came within the expressed permission. But, in discussing the second defense, which was the agreement between the parties that the plaintiff should procure from other insurers insurance on the same property to the amount of $75,000 at least, which should be concurrent and proportionate with the policy of the defendant, the court said:

"The true intent of this agreement was that, simultaneously with the complete execution of the defendant's contract, the plaintiff would procure other insurance of such a character as would limit the defendant's responsibility."

As to that defense the court said:

"Concurrent insurance required by an insured must, where there is no qualifying provision, run with the primary insurance for all the time and over all the objects covered by the latter. In the present case the insurance required was to be, not only concurrent, but for a definite amount, and proportionate; that is, the amount was to be distributed among the various items of property insured, in the same proportion as was the amount of the defendant's policy."

For the reason that this agreement was not carried out by the plaintiff, the court held that the defendant's policy did not become operative. The agreement to procure concurrent insurance in that case was for the protection of the defendant. The defendant required that the insured take out additional insurance in other companies, and in order to secure the protection which was expressly stipulated for it was necessary that such other policies cover all the property which the defendant had insured. The construction placed by the court, in that case, upon the word "concurrent" as used in the agreement, can hardly be said to be appropriate to a case like that at bar, where the insurer, instead of requiring concurrent insurance, simply granted permission to the insured to obtain it.

In Gough v. Davis, 24 Misc. Rep. 245, 52 N. Y. Supp. 947, the policy provided that the procurement of additional insurance, except by agreement with the insurer, should void it; but it recited:

"Permission is hereby given for other concurrent insurance."

The court held that the policy was not made void by other insurance covering only a part of the property, and said:

"The object was to give the insured permission to have other insurance on the property during the existence of the policy. This would be concurrent insurance in respect of time and of the property. It would be concurrent in respect of time, though for a shorter period than that of the

policy, and in respect of the property, though not upon all of it. It would not be wholly, but only partly, concurrent; and that, I think, is sufficient, in order to be within the terms of the permission. It does not seem to me that the insured could be expected to understand that the word was used in the precise and restricted sense that the additional policies must exactly concur in covering all the property any more than all of the time. * * * It is contended in the case at bar, however, that the permission for other insurance was intentionally restricted to 'concurrent' insurance for the purpose of avoiding the difficulty of apportioning the loss among different insurers, where some of the policies cover all of the property and others cover only specific parts of it. If insurers want to express such a meaning and make such a contract, in order to do away with an old inconvenience by the severe alternative of a forfeiture, they should do it unequivocally; for that is the rule applicable. If the words are uncertain, or reasonably susceptible of two constructions, the construction of the insured will be upheld."

In Caraher v. Royal Ins. Co., 63 Hun, 82, 17 N. Y. Supp. 858, the court held that insurance was none the less concurrent in a case where the loss, if any, under one policy would be payable to the assured, and under another policy the company had by indorsement assented to its payment to a mortgagee as his interest might appear.

In Corkery v. Security Fire Ins. Co., 99 Iowa, 382, 68 N. W. 792, the court said:

"Defendant claims that these policies are nonconcurrent, because they do not specify the amount of insurance, separately, on the goods held in trust or on commission. It is conceded that, if they specified the sum thereof applicable to the property covered by the policy in suit, they would be concurrent; but it is insisted that, as they are, an adjustment cannot be readily made. The provision as to contribution provides for such adjustment, and the fact that it may not be so easily made as if the policies each covered only the same property is no reason for holding them to be nonconcurrent."

In Washburn-Halligan C. Co. v. Merchants' B. M. F. Ins. Co., 110 Iowa, 423, 81 N. W. 707, 80 Am. St. Rep. 311, the court said:

"Here the clause 'other concurrent insurance permitted' did no more than wipe out the prohibition of the policy. The hazard of excessive insurance was entirely waived, and, in so far as the risk was concerned, it was immaterial whether the additional insurance was on one or all the items covered by the defendant's contract. 'Concurrent insurance,' under the circumstances, means any insurance running with that of the defendant, and sharing its risk. If so, it would include policies covering, not only a part of defendant's risk, but all of it, and more."

It seems reasonably clear that an ordinary man, reading the rider on the policy, would not find in the word "concurrent" the meaning which the plaintiff in error now seeks to give it. Where a policy is susceptible of two constructions, either of which may be given without violence to the words used, the construction most favorable to the assured will be adopted; and, in ascertaining the meaning of ambiguous provisions, assistance is often found in the practical construction given thereto by the parties to the contract. In this case both parties to the contract gave it the construction which the defendant in error contends for. The evidence that the defendant in error gave it that construction is that it proceeded to procure the insurance which it did, assuming that it was permissible to do so under the contract. The evidence that the plaintiff in error so understood the contract

is found in the correspondence between the parties after the loss. The fire occurred on August 10, 1910. Within 60 days thereafter the defendant in error gave the plaintiff in error a statement setting forth, among other items, all the insurance on the property, and the terms of the policies thereon. Thereafter, during the months of October, November, and December, 1910, written communications passed between the parties, in which, to all appearance, all of the insurance was treated as concurrent. The matter of the difference between the parties was that the defendant relied upon the clause of its policy relating to the proportion of the loss to be borne as affected by the total amount of the insurance. On January 3, 1911, the plaintiff in error submitted a proposition for arbitration, in which all the insurance was treated as concurrent, and in which forms for findings were submitted, among others, as to the liability of the Lloyd's underwriters and the St. Paul Fire & Marine Insurance Company. It does not appear that prior to the time of filing its answer herein, which was in July, 1911, the plaintiff in error ever claimed that the other insurance was not concurrent, or that its policy had been voided.

The argument of the plaintiff in error that the purpose of the prohibition in the policy against other insurance is to avoid the moral hazard involved in over insurance, and that such moral hazard would be enhanced by marine policies, which provide for payment only in case of total loss, is not convincing as applied to the present case. The plaintiff in error voluntarily removed its restriction upon other insurance, and placed no limitation upon the amount of the concurrent insurance which it permitted. Under that permission, overinsurance might have been placed on the property under policies differing in no essential feature from that of the plaintiff in error. The fact that some of the policies which were taken out were marine insurance does not indicate any enhancement of the moral risk. It is true that the policies herein were not concurrent in kind or in method of adjustment with the policy of the plaintiff in error; but they were concurrent in time and concurrent as to the property which they covered. If the plaintiff in error intended that the concurrent insurance should be identical with its own, it should have expressed that meaning in terms so clear as to admit of no doubt, and it would have been a simple matter to do so. We think that the contract was susceptible of the construction which the court below gave it, and that there was no error in the rulings, or the instructions, or refusal to instruct.

The judgment is affirmed.