J. ARTHUR MINNEAR & another *vs.* HARRY H. GAY & others.

Suffolk. November 13, 14, 1913. — April 23, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Practice, Civil,* Conduct of trial: document produced upon notice. *Stockbroker. Sale. Contract,* Performance and breach. *Damages,* In contract.

At the trial of an action against a stockbroker involving the question whether, in carrying out sales of certain shares of stock for the plaintiff, the defendant procured memoranda from the purchasers sufficient to satisfy the statute of frauds in force at the place of sale, the defendant, in response to a demand by the plaintiff for "all written confirmations and written contracts of sale of these shares of stock which your sold notes say you sold," handed to the plaintiff certain documents regarding the purchases signed by the purchasers, and the plaintiff thereupon introduced the documents in evidence without comment as to whether they related to the transactions in question, and the judge, subject to an exception by the defendant, left it to the jury to determine whether the documents referred to the transactions in question. *Held,* that the exception should be sustained, because the defendant had a right to assume that the plaintiff accepted the documents and put them in evidence on the terms on which they had been called for.

Where a stockbroker sells shares of stock for a customer "entirely at your [the customer's] risk," or "for your [the customer's] account and risk," the risk of the purchaser failing to take and pay for the shares is upon the customer and not upon the stockbroker.

If a stockbroker, acting for a customer, in selling shares of stock for the customer's account and risk to a purchaser who is apparently responsible financially, fails to make with him a valid and enforceable contract of sale, and the purchaser becomes financially irresponsible before the time arrives for the delivery of the stock, the stockbroker is liable to his customer for the damage caused by his failure to make the contract valid and enforceable, and the measure of damages is the portion of his loss which the customer might have collected by way of dividends or otherwise from the estate of the purchaser, and not the whole loss caused by the depreciation in the value of the shares from the amount of the sale price.

LORING, J. The bill of exceptions in this case is a meagre one. So far as disclosed the facts were in substance as follows:

Shortly before April 14, 1909, the plaintiffs employed the defendants as stockbrokers to sell for them three hundred and seventy-five shares of the capital stock of the Butte Alex Scott Copper Company. It is stated in the bill of exceptions that this stock was not listed on any exchange, and it seems to have been assumed at the trial that the order given was to be executed in Duluth, Minnesota. On April 14, 16 and 17, the defendants reported to the plaintiffs six sales of the stock in question, amounting in the aggregate to three hundred and seventy-five shares. On four of these reports of sales, (being sales amounting to two hundred and fifty shares,) the following words were stamped: "The above transaction was made on the curb, and is done entirely at your risk." The other two reports, covering the remaining one hundred and twenty-five shares, state: "In obedience to your order we have this day sold for your account and risk," etc.

It appeared in evidence that on April 20 or 21, the western manager of the defendants called at the plaintiffs' office in Laurium, Michigan (where the order to sell was given), and told one of the plaintiffs that the persons to whom the defendants had sold the stock had "over extended themselves" and were unable to accept and pay for the stock; and for that reason the defendants "could not accept delivery from the plaintiffs." To this Minnear answered that they should hold the defendants responsible.

Thereupon this action was brought. The plaintiffs had a verdict which we infer was for an amount equal to the difference between the prices for which the defendants reported that the stock had been sold and the price of the stock on the day of this interview between the defendants and the plaintiffs.

At the trial the Minnesota statute of frauds (R. L. Minn.

1905, § 3484) was put in evidence by the plaintiffs,* and their counsel asked the defendants to produce "all written confirmations and written contracts of sale of these shares of stock which your sold notes say you sold." In compliance with that request the defendants handed the plaintiffs "confirmations" of purchase signed by the purchaser for two hundred and seventy-five shares, and two notes signed by one Lugoff "each stating that he had sold for the defendants' account 50 shares of" the stock in question. "Plaintiffs' counsel inquired whether these were all the written documents received by the defendants from the various parties, to which defendants' counsel replied that they were all that he had there; that whether they were all that were in existence or not he did not know; whereupon the plaintiffs introduced in evidence said papers, which were marked respectively exhibits 6, 7, 8, 9 and 10." Exhibits 6, 7, 8, 9 and 10 are not set forth in the bill of exceptions.

On this evidence the judge instructed the jury that if the exhibits 6, 7, 8, 9 and 10 referred to the "transactions" here in question, the Minnesota statute of frauds had been complied with; but if they did not refer to these transactions that statute had not been complied with and the defendants were negligent in the performance of the duty which they owed to the plaintiffs, namely, to make a valid and enforceable sale of the shares of stock which they had undertaken to sell for the plaintiffs. We are of opinion that the judge was wrong in allowing the jury to find that these exhibits did not refer to the "transactions" here in question. These exhibits were produced by the defendants on the plaintiffs' request, as the "written confirmations and written contracts of sale" relating to the "transactions" here in question. Upon their being produced by the defendants as papers relating to the

---

* R. L. Minn. 1905, § 3484, is as follows:

"3484. Contracts for sale of goods, when void —

"Every contract for the sale of any goods, chattels, or things in action, for the price of fifty dollars or more, shall be void, unless:

"1. A note or memorandum of such contract is made and subscribed by the parties to be charged therewith; or,

"2. The buyer accepts and receives part of such goods, or the evidences, or some of them, of such things in action; or,

"3. The buyer, at the time, pays some part of the purchase money (4210)."

"transactions" here in question they were accepted by the plaintiffs and put in evidence by them without comment. If the plaintiffs had wished to contest the fact that these papers did relate to these "transactions," they should have made a statement to that effect then, or at any rate before the evidence was closed, and thus have enabled the defendants to introduce evidence on the issue. Upon the papers being accepted and put in evidence by the plaintiffs without comment, the defendants had a right to assume that the plaintiffs accepted them and put them in evidence on the terms on which they had been called for, namely, as papers relating to the "transactions" here in question. Under these circumstances it was error to allow the jury to find that they did not relate to these "transactions." No case directly in point has been brought to our notice. The nearest authorities are those in which it is held that the authenticity of a paper or the authority of the person signing it is conceded if the paper is put in evidence without objection. See *Bartlett* v. *O'Donoghue,* 72 Mo. 563; *McClung* v. *McPherson,* 47 Ore. 73.

As the case must go back for a new trial we consider other questions argued here which are likely to arise there.

On the facts disclosed on this record the third ruling asked for by the defendants should have been given.* In the absence of the whole charge we assume that this was the view taken by the presiding judge, and that he refused to give the ruling not because it was wrong if a valid contract was made, but because on the evidence he ruled that it was for the jury to determine whether a valid contract had or had not been made, since that depended (under his charge) upon the question whether exhibits 6, 7, 8, 9 and 10 did or did not relate to these "transactions."

It is stated that the papers thus handed to the plaintiffs, so far as the one hundred shares sold on April 17, 1909, were concerned, consisted of "Two notices from N. E. Lugoff to plaintiffs dated April 17, 1909, each stating that he had sold for defendants' account 50 shares of Butte Alex Scott stock." We do not see how a notice from a third person addressed to the defendants, by which the third person stated that he has sold for the defendants

---

* The third ruling asked for was as follows:

"3. Upon the evidence the risk of the purchasers of the stock failing to take and pay for the same was upon the plaintiffs and not the defendants."

the shares which the defendants undertook to sell for the plaintiffs, show that the Minnesota statute of frauds had been complied with in the sales which the defendants reported to the plaintiffs that they had made for the sale of their (the plaintiffs') stock. As we have said, no one of these exhibits is set forth in the bill of exceptions. We assume that the last part of the judge's charge stated above referred to these two notices.*

The defendants have argued that even if they had failed in their duty of making a valid, enforceable contract, they are "not liable for any damage which does not result therefrom;" that "there was no evidence that the failure of the buyers to take and pay for the stock was due to any failure on the part of the defendants to make valid contracts, but on the contrary it appeared that such failure was due to the fact that the buyers of the stock had already over extended themselves in the purchase of it." If the defendants sold to an apparently responsible purchaser but failed to make a valid and enforceable contract with him, and he (the purchaser) became financially irresponsible before the time came for delivery of the stock sold, the defendants are liable for the damages caused by their failure to make the contract of sale a valid and enforceable one. The measure of damages, however, is not the whole loss caused by the depreciation of the stock, but the amount which the plaintiffs could have collected, by way of dividend or otherwise, from the purchasers who had become financially irresponsible.

*Exceptions sustained.*

*S. H. Pillsbury,* (*W. J. Nolan* with him,) for the defendants.
*J. B. Jacobs,* for the plaintiffs.

---

* The last part of the charge was in these words: "I think I ought to instruct you, in view of a point to which my attention has been called with reference to the evidence, that if you find there is not any statement by anybody as a buyer of the stock in Minnesota, so far as that is concerned there is not any evidence to satisfy the Minnesota law. . . . If there is evidence in the case by which you are satisfied that there is something in writing signed by a person to be charged, and who can be charged, upon a paper setting out the general terms of the transaction, that meets the requirements of the Minnesota law. If there is not any such thing, then that requirement of the Minnesota law is not met, and the defendants are in fault in failing to secure valid contracts, — contracts, that is to say, which could be enforced and were binding under the law of Minnesota."