MAURICE J. HAMILBURG *vs.* WILLIAM MEFFERT & others.

Suffolk. February 6, 1935. — April 29, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Stockbroker.* *Negligence,* Of stockbroker. *Practice, Civil,* Charge to jury, Exceptions.

In an action in which the issue was whether the account of a margin customer of a stockbroker was chargeable with a loss which, the customer contended, would not have occurred had the stockbroker carried out his orders, and there was evidence that such orders were given on the busiest day in the history of the stock exchange, when stocks were fluctuating widely and the stockbroker was unable to obtain prompt information as to what was occurring, an exception by the stockbroker to the giving of a ruling requested by the customer, that "Where a broker fails to carry out the customer's instructions he is liable for a breach of the duties which he has assumed as his customer's agent," must be overruled where, from other instructions given to the jury and from the jury's findings it appeared that the jury could not have understood and did not understand such ruling to mean that the stockbroker was liable for failure to carry out the customer's orders irrespective of the stockbroker's care, diligence and good faith in attempting to carry them out, but that the jury must have understood that the general statement of the stockbroker's duty made in such ruling was subject to the qualification that he could not be judged by an unreasonable standard or held liable for failure to perform the impossible; especially where, after the charge to the jury, the stockbroker did not request the trial judge to give further instructions designed to clarify the meaning of such ruling.

CONTRACT OR TORT. Writ dated November 8, 1929.

The action was tried in the Superior Court before *Sisk,* J. Material evidence and instructions to the jury are described in the opinion. There was a verdict for the plaintiff in the sum of $13,231.78. The defendants alleged exceptions.

*B. A. Brickley,* (*R. H. Lee* with him,) for the defendants.
*Lee M. Friedman,* (*F. L. Kozol* with him,) for the plaintiff.

QUA, J. The defendants were stockbrokers doing business under the name of Clark, Childs and Company with offices in Boston and New York. The plaintiff was a margin customer of the defendants. This action is brought to

recover a balance to the credit of the plaintiff in his account with the defendants. There was a verdict for the plaintiff. The only issue now raised turns upon the attempt of the defendants to charge the plaintiff's account with a substantial loss which resulted from the plaintiff being "short" two hundred shares of "Westinghouse." The plaintiff contends that he would not have been short if the defendants had carried out diligently and faithfully the orders to buy and to sell which he had given them.

The only exception argued by the defendants is to the giving by the judge of a ruling requested by the plaintiff as follows: "Where a broker fails to carry out the customer's instructions he is liable for a breach of the duties which he has assumed as his customer's agent." The sole question for our decision is whether the granting of this request was error in view of the evidence and of other portions of the judge's charge.

On October 29, 1929, at about 10:45 A.M. the plaintiff ordered the defendants, through their Boston office, to buy for the plaintiff three hundred shares of Westinghouse at a price named. This order was duly executed. At about twelve o'clock of the same day the plaintiff ordered the defendants to buy an additional two hundred shares of Westinghouse at $100 a share. This order was in fact not executed by the defendants. There was evidence that the stock went down to one hundred that day and that the plaintiff made repeated inquiries about it from the defendants at their Boston office, and that the defendants' man replied in substance that he had not heard from that order, but that they were "chasing it," that there was a lot of confusion "down there," but that he was doing the best he could. The plaintiff testified that, still not having learned definitely whether the two hundred shares had been bought or not, as the hour for the closing of the stock exchange approached he became "terribly disturbed" and at 2:40 P.M. called up Louis M. Jacobs, the customers' man at the defendants' Boston office, and said to him, "Louis, I want you to know and want you to understand that I am telling you plainly and distinctly to sell for me what you bought,

if you bought three hundred shares of Westinghouse you sell three hundred shares of Westinghouse, if you bought five hundred shares of Westinghouse sell five hundred shares of Westinghouse but in any event don't sell any more than what you bought for me because if you do I will hold you and the house, Clark and Childs responsible, I want to be cleaned out of this market today, at the close of this market," and that Jacobs replied he would do the best he could. The plaintiff further testified as follows: "I didn't tell him to sell five hundred shares of Westinghouse. I told him to sell what Westinghouse I owned on their books, no more and no less, if I owned five hundred shares to sell five hundred, if I owned three hundred shares to sell three hundred." Although the defendants had not succeeded in buying the two hundred shares, they did before the close of the market on that day sell for the account of the plaintiff five hundred shares at 122½. Thus the day ended with the plaintiff two hundred shares short.

There was evidence in behalf of the defendants that October 29, 1929, was the busiest day in the history of the New York Stock Exchange, that stocks were fluctuating violently over a wide range, that the "ticker" fell behind the sales so that by closing time it was over two hours late, that there were only four sales of Westinghouse at as low as 100, all of which took place between 11:49 A.M. and 11:55 A.M., but did not appear on the tape until about an hour later.

The defendants argue that the instruction given made them insurers for the execution of the plaintiff's orders whether or not it was possible for them to do so and without regard to their care, diligence and good faith; that the jury were thereby forbidden to find in the defendants' favor on the ground that in the hurry and confusion of an unprecedented day and in the absence of the usual prompt information, the defendants did all that reasonably could be expected of them both in endeavoring to buy the two hundred shares at 100 and in selling the five hundred shares when, as they contend, they could not find out whether they had succeeded in buying that many.

We do not think the jury could have understood the instruction as the defendants contend. The jury were told that this instruction had been asked for by the plaintiff. The instruction was that the broker "is liable for a breach of the duties which he has assumed as his customer's agent." The judge earlier in his charge had in his own language discussed the broker's duty, stating that the broker, "if he does his duty simply stands there and takes the orders from the plaintiff, and in so far as they can be carried out, carries them out, if there is a loss, it falls on the man who puts the order in, not on the broker, if he has done his duty . . . ." Again, the judge had said: "It was the duty of the defendants, as brokers, to conduct themselves at all times in the interests of the plaintiff, their customer, and for his best protection and advantage. That is he occupied that relation to do what he could in the interest of his client." Later in the charge, he said: "The defendants, as brokers, having accepted employment from the plaintiff, and having become the plaintiff's agent, must carry out the instructions given to them for the purchase and sale of securities; accordingly they must execute the plaintiff's orders as given and if they negligently failed to do so they are liable in damages. That all depends on what you find the facts to be in this case. That is a correct statement of the law I think, but its application will depend on how you determine the facts."

When other parts of the charge are taken into account, we think the jury must have understood the instruction complained of as a very general statement of the broker's duty under ordinary circumstances, and that it was subject to the qualification that the broker could not be judged by an unreasonable standard or held liable for failure to perform the impossible. That would be a correct understanding of the law. *Spicer* v. *Hincks*, 113 Conn. 366, 375. *Cisler* v. *Ray*, 213 Cal. 620. See *Minnear* v. *Gay*, 217 Mass. 403; *Barnard* v. *Coffin*, 138 Mass. 37; *Harris* v. *Tumbridge*, 83 N. Y. 92, 98; and cases collected in 9 C. J. page 535.

That the jury did so understand the charge is shown

by the fact that they found the defendants not responsible for failure to purchase the additional two hundred shares, although it was admitted that they had been ordered and not purchased. If the defendants felt that the qualifications upon the broad language of the instruction excepted to were not sufficiently connected with the instruction itself or that more was needed to render the true meaning clear to the jury, they should have called that matter to the attention of the judge at the time in some more direct way than merely by saving an exception to the granting of an opponent's request. *Doe* v. *Boston & Worcester Street Railway*, 195 Mass. 168, 172. *Hamilton* v. *Boston Elevated Railway*, 213 Mass. 420, 423. *Cronin* v. *Boston Elevated Railway*, 233 Mass. 243, 246.

*Exceptions overruled.*